NATIONAL ACCEPTANCE COMPANY OF AMERICA, a corporation, Plaintiff,

v.

Robert W. DEMES and Walter S. Turner, Individually and as partners of D & T Investors, a partnership, and Arthur Robert Steiskal, Defendants.

No. 77 C 755.

United States District Court, N. D. Illinois, E. D.

Oct. 3, 1977.

James C. Murray, Jr., Katten, Muchin, Gitles, Zavis, Pearl & Galler, Chicago, Ill., for plaintiff.

Richard H. Compere and Gary M. Ropski, Hume, Clement, Brinks, Willian & Olds Ltd., Chicago, Ill., Michael A. Gallo, Nadler & Nadler, Youngstown, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

McGARR, District Judge.

This is a diversity action brought under 28 U.S.C. § 1332, by National Acceptance Company of America, a finance company incorporated in Delaware and having its principal place of business in Illinois, against three citizens of Ohio, Robert W. Demes, Walter S. Turner, and Arthur R. Steiskal. Plaintiffs allege, and defendants admit, that defendants signed as guarantors of two notes evidencing obligations of one Dart Tool Die and Machine, Inc. to the plaintiff financing company totalling approximately $80,000. It is undisputed that Dart Tool has defaulted on its said obligations and is currently engaged in bankruptcy proceedings not the subject of this action.

Plaintiff commenced this action against the individual guarantors in March, 1977, and filed a complaint in the bankruptcy proceedings of Dart Tool in April, 1977, seeking reclamation of certain property of that corporation in which the finance company claims a security interest given by Dart Tool, to secure the obligations with which we are concerned in this case. The trustee in bankruptcy filed an answer to the reclamation petition, in which he contested the validity of the security interest as against him on the grounds that the finance company had failed to make use of the two filings required by Ohio law to record a security interest in chattel. Hav-

ing not been advised to the contrary, we assume that the issue is still pending for resolution in the bankruptcy case.

As defenses in the case at bar, defendants assert that the primary obligor, Dart Tool, should have been joined in this action, that plaintiff should be required to look for satisfaction of the obligations first to the collateral given it by Dart Tool and, by way of counterclaim, that it was the parties' intention that the debt be fully secured by said collateral, that plaintiff therefore had a duty properly to perfect its security interest, and that its failure to do so is to defendants' substantial harm. Plaintiff has moved to strike these defenses and the counterclaim, and for summary judgment under Rule 56; the parties have agreed that the motions should be treated together as one for summary judgment.

We look to the parties' agreement as memorialized in their contracts of guaranty, to determine the issues at hand. Although three different agreements are involved, two appearing on the backs of the installment notes executed by Dart Tool and one being a separate contract, the important language in all is identical and the cumulative effect of the agreements is to hold all three defendants liable as guarantors as to the total amount of Dart Tool's indebtedness to the financing company, the amount of which has not been contested.

It is apparent from an examination of the contracts that defendants' contention that Dart Tool is a necessary party to this action cannot stand. The agreement expressly states:

In the event the maker of the Note fails to pay the same (or any portion thereof) when due or declared due, then, notwithstanding any collateral that the holder of the Note may possess from . . . any . . . party, at the holder of the Note's election, without notice thereof or demand therefor, the undersigned's obligations hereunder . . . shall become due and payable and enforceable against the undersigned . . . and in the event such payment is not made forthwith, *said holder may proceed to suit against the undersigned, jointly or severally . . . whether or not suit has been commenced against the maker of the Note,* and in any such suit said maker may be joined as a party with the undersigned. . . .

Prior to receipt of or as a condition to payment or performance by the undersigned hereunder, *the holder of the Note is not required to . . . prosecute collection or to seek to enforce or resort to any remedies against the maker of the Note* or any other party liable to said holder on account of the Note or any guaranty thereof.

(emphasis added)

It is difficult to see how the plain meaning of this language can be interpreted to mean anything other than that the parties have agreed that, upon default by Dart Tool, the financing company may proceed directly against the guarantor-defendants for satisfaction of its claim, and that it is not required to join Dart Tool in the action.

Similarly, although defendants contend that the value of the collateral given by Dart Tool must be set off against plaintiff's claim against them, the printed contract belies the fact that such was the parties' agreement:

In the event that the maker of the Note fails to pay . . . then, *notwithstanding any collateral* that the holder of the Note may possess from the maker of the Note . . . the undersigned's obligations hereunder to the holder of the Note shall become due and payable and enforceable against the undersigned.

. . .

Prior to receipt of or as a condition to payment or performance by the undersigned hereunder, the holder of the Note is not required to . . . seek to enforce or resort to any remedies with respect to any security interests, liens, or encumbrances granted to said holder by said maker . . . or any other party.

Upon payment of the obligation, of course, the guarantors will be subrogated to the rights of the financing company in the collateral, but this is consistent with the par-

ties' plan that the finance company be able at its option to collect its money due from the guarantors directly.

■ Defendants' most serious contention appears in their counterclaim in support of which they argue, not without logic, that it was the contemplation of all the parties that they were engaging in a secured transaction, that defendants relied upon the fact that the obligations they were guaranteeing were adequately secured by collateral, that therefore plaintiff had a duty to use due care to perfect its security interest in the collateral, and that its failure to do so should either discharge defendants from their duty to pay or should render the financing company liable to defendants to the amount of their harm.

■ Defendants' assertion of a duty of due care to perfect on the part of the financing company rests on two bases, one implied by common law and one codified in § 3–606 of the Uniform Commercial Code, 26 Ill.Rev.Stats. § 3–606(1)(b). Such a duty was implied by the court in *Ammerman v. Miller,* 159 U.S.App.D.C. 385, 488 F.2d 1285 (1973), but unless it would be contrary to public policy to do so, an implied duty on the part of one of the parties to a contract can always be negated by an express provision to the contrary in the agreement itself.

Section 3–606(1)(b) of the Uniform Commercial Code provides:

The holder discharges any party to the instrument to the extent that *without such party's consent* the holder . . . unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

(emphasis added)

Assuming, without deciding, that the notes in question here are "instruments" within the meaning of § 3–606(1)(b), and that the discharge provisions of that section are applicable to the case at bar, a finding that the guarantors had "consented" to the impairment of collateral renders discharge unavailable by the terms of that statute. That "consent" may be found to have been given in the guaranty agreement and need not be an explicit consent to a particular impairment immediately before such impairment is indicated by the Official Comment to § 3–606, which states:

Consent may be given in advance, and is commonly incorporated in the instrument. . . . It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge.

We are brought once more, then, to an examination of the written guaranty agreements in order to determine whether the financing company's implied duty to perfect its security interest has been negated therein or whether defendant guarantors have consented therein to plaintiff's impairment of collateral.

In addition to the language of the agreement quoted above in this opinion, we note the following provisions:

The undersigned hereby waive notice of the following events or occurrences: . . . the holder's . . . obtaining, amending, substituting for, releasing, waiving, or modifying any . . . security interests, liens, or encumbrances; [or] . . . the holder's . . . hereafter accepting . . . any collateral securing the payment . . . or said holder's settling, subordinating, compromising, discharging, or releasing the same. The undersigned agree that the holder of the Note may . . . do any or all of the foregoing events or occurrences in such manner, upon such terms and at such times as said holder, in its sole and absolute discretion, deems advisable, *without in any way or respect impairing, affecting, reducing, or releasing the undersigned from their obligations hereunder and the undersigned hereby consent to each and all of the foregoing events or occurrences.*

. . . *The holder of the Note shall have no obligation to protect, secure, or insure any of the foregoing security interests,* liens, or encumbrances or the properties . . . subject thereto. *The undersigned's obligations hereunder shall in no way be impaired affected,*

reduced, or released by reason of (i) the holder of the Note's *failure or delay to do or take any of the acts* . . . describ-ed herein . . . or (ii) the invalidity, unenforceability, loss or change in priori-ty or reduction or loss of value of any of the aforesaid security interests, liens, and encumbrances.

(emphasis added)

Although it is true that an instru-ment purporting to establish liability against a guarantor must be construed strictly and any ambiguities resolved against the drafter of the instrument, *D. W. Jaquays & Co. v. First Security Bank,* 101 Ariz. 301, 419 P.2d 85 (1966), the guar-antee agreement here appears to be plain on its face and clearly meant to cover, among many other things, precisely the sit-uation that has occurred here. The agree-ment expressly disclaims a duty on the part of the financing company to "protect, se-cure or insure" any security interests or property subject thereto; the guarantors expressly consent to any act "releasing" or "waiving" any security interests; and the guarantors' obligations are expressly said not to be reduced or released by the financ-ing company's failure or delay to do any acts with regard to security interests or by the unenforceability, etc., of the same.

Defendants rely on several cases in which, notwithstanding the fact that their guaranties were unconditional, guarantors were held discharged by the lender's failure to perfect security interest. See *D. W. Jaquays & Co. v. First Security Bank, su-pra; Behlen Mfg. Co. v. First National Bank of Englewood,* 28 Colo.App. 300, 472 P.2d 703 (1970); *First National Bank v. Haugen Ford,* 219 N.W.2d 847 (N.D.1974); *First Bank and Trust Company, Palatine v. Post,* 10 Ill.App.3d 127, 293 N.E.2d 907. But in none of these cases does the agree-ment in question even approach the thor-oughness with which the agreement in the case at bar protects the interests of the finance company. Further, agreements containing substantially less explicit lan-guage on the question of the lender's duty not to impair collateral have been found by

other courts to constitute waiver by guar-antors of the right to discharge under the circumstances here presented. See *Joe Heaston Tractor & Implement Company v. Securities Acceptance Corp.,* 243 F.2d 196 (10th Cir. 1957); *Ishak v. Elgin National Bank,* 363 N.E.2d 159 (2d Dist. 1977). We cannot escape the conclusion that, however justifiable defendants' expectations that the finance company should proceed with care to perfect its security interests proper-ly, these expectations were not protected by the guaranty agreement they signed.

Accordingly, there being no genuine issue of material fact, and plaintiff being entitled to judgment as a matter of law, plaintiff's motion for summary judgment is granted. Plaintiff's motion to strike defendants' counterclaim is granted.