NATIONAL ACCEPTANCE COMPANY
OF AMERICA, a Delaware
Corporation, Plaintiff,

v.

James M. WECHSLER, Defendant and
Third-Party Plaintiff,

v.

WINDSOR–DETROIT BARGE LINE,
LTD., a Canadian Corporation,
Third-Party Defendant.

No. 78 C 2115.

United States District Court,
N. D. Illinois, E. D.

April 9, 1980.

On Motion to Transfer May 5, 1980.

James Murray, Jr., Richard L. Epling, Katten, Muchin, Gitles, Zavis, Pearl & Galler, Chicago, Ill., for plaintiff.

Roger L. Premo, Southfield, Mich., for third-party plaintiff.

William J. Campbell, Jr., Andrew J. Maxwell, O'Brien, Carey, McNamara, Scheuneman & Campbell, Ltd., H. Russell Barefield, Warren J. Marwedel, Haskell & Perrin, Chicago, Ill., for third-party defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This action arises out of a demand by plaintiff National Acceptance Company of America ("NAC") for payment of the amount due on certain loans for which defendant James M. Wechsler was the guarantor. The loans were made to Detroit Harbor Terminals, Inc. ("Detroit Harbor"),

pursuant to separate agreements between NAC and Detroit Harbor in September, 1974, and July, 1976. At the time each of these agreements was executed, Wechsler also signed individual guaranties whereby he promised to assume responsibility for Detroit Harbor's indebtedness. On May 9, 1978, NAC notified Wechsler of Detroit Harbor's default on the amount due under the two loan agreements—nearly $500,000 —and demanded from him payment of that sum pursuant to the guaranties he signed. When Wechsler failed to pay the amount due, NAC filed this diversity action. 28 U.S.C. § 1332.

The case now is before the Court on NAC's motion for summary judgment. NAC submits that there is no dispute as to the following facts: (1) that defendant Wechsler signed the individual guaranties in question; (2) that NAC made loans to Detroit Harbor in the amount of $800,000; and (3) that Detroit Harbor has defaulted on the loan payments. Based on these facts, NAC argues that Wechsler as a matter of law is liable under the guaranties for the amount due. The defendant has failed to introduce any persuasive evidence in rebuttal of these factual assertions. Rather, defendant resists the motion for summary judgment on the grounds that the numerous affirmative defenses and counterclaims he raises—thirteen in all—involve unresolved issues of fact that render summary adjudication of this action inappropriate.

■ The Seventh Circuit has observed that "[w]ith the ever increasing burden upon the judiciary, persuasive reasons exist for the utilization of summary judgment procedure whenever appropriate." *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 560 (7th Cir. 1970). The benefit of this procedure is that it permits the court to avoid a useless trial when there are no factual disputes remaining in a case. Nonetheless, it is not within the province of the Court to resolve issues of disputed material fact in a trial by affidavit. *Moutoux v. Gulling Auto Elec-*

*tric, Inc.*, 295 F.2d 573, 576 (7th Cir. 1961). "[T]he party moving for summary judgment has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in [its] favor." *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir. 1979). Any doubts must be resolved against the moving party. *Moutoux*, 295 F.2d at 576. It is in light of these principles that the Court will address the issues raised by defendant's affirmative defenses and counterclaims.

## I. PROCEDURAL AFFIRMATIVE DEFENSES

In affirmative defenses I through VI, defendant claims that the complaint fails to state a claim upon which relief may be granted; that the Court lacks personal jurisdiction of Wechsler and subject matter jurisdiction of this action; that service of process was insufficient; that venue is improper in the Northern District of Illinois; and that the action must be dismissed for failure to join a number of necessary parties pursuant to Fed.R.Civ.P. 19(a). For the reasons that follow, the Court finds all these claims to be without merit.

■ Defendant's argument that the complaint fails to state a claim is based on a misreading of the complaint. Defendant suggests that the complaint fails to allege that Detroit Harbor has defaulted on payment of the amount due to NAC under the loan agreements or the amount of the indebtedness; yet that information is set forth clearly in the complaint. *See* Count I, ¶¶ 5, 9, 11; Count II, ¶¶ 8, 10, 12. Accordingly, the Court finds that the complaint adequately sets forth "a short and plain statement of the claim" as required by Fed. R.Civ.P. 8(a). *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Austin v. House of Vision*, 385 F.2d 171 (7th Cir. 1967).[1]

---

1. Defendant also argues that since the burden is on plaintiff to show that any sale of collateral was made in a commercially reasonable man-

ner, plaintiff's failure to so allege constitutes a fatal flaw in the pleadings. Commercial reasonableness, however, is an affirmative de-

Defendant's positions with respect to personal jurisdiction and service of process are interrelated; he asserts that the Court lacks personal jurisdiction over him because the service of process was insufficient. Under the guaranty contracts, Wechsler designated as his agent for service of process, H. G. Kanes, the past president of NAC. Pursuant to these contracts, it was agreed that Kanes would forward process to Wechsler within five days of service. By these contracts, Wechsler also agreed to submit to personal jurisdiction in the Northern District of Illinois.

■ Wechsler, however, now argues that Kanes' affiliation with NAC creates a conflict of interest which invalidates Kanes' appointment as his agent for process. This contention, however, was considered and rejected in *National Equipment Rental Ltd. v. Szukhent*, 375 U.S. 311, 317–318, 84 S.Ct. 411, 415, 11 L.Ed.2d 354 (1964):

> . . . [S]uch a contention ignores the narrowly limited nature of the agency here involved. Florence Weinberg was appointed the respondents' agent for the single purpose of receiving service of process. An agent with authority so limited can in no meaningful sense be deemed to have an interest antagonistic to the respondents, since both the petitioner and the respondents had an equal interest in assuring that, in the event of litigation, the latter be given that adequate and timely notice which is a prerequisite to a valid judgment.

See also *National Acceptance Company of America v. Darby K. Coal Company, Inc.*, Civil Case No. 76 C 1857, Unpublished Op. at 2 (N.D.Ill., December 23, 1976). Defendant further alleges that Kanes failed to forward the process to Wechsler within the agreed five-day period. If this were the case, then the service of process would be

invalid. *Szukhent*, 375 U.S. at 318, 84 S.Ct. at 415. NAC, however, has supplied an affidavit by Kanes attesting to the fact that he received service on June 14, 1978, and forwarded the process to the defendant on June 19, 1978. In addition, NAC has submitted a true and correct copy of a certified mail receipt indicating that service was forwarded on June 19, 1978. In the face of this evidence, defendant's unsupported allegations are insufficient to raise a factual issue concerning the validity of process or of personal jurisdiction.

■ With respect to joinder under Rule 19(a), defendant asserts that because Detroit Harbor is "jointly and severally liable" for the amount due NAC, it is an indispensable party to this action. Defendant also lists as necessary parties several other entities who are parties in related actions pending in the Eastern District of Michigan. The Court, however, has grave doubts that these parties are indispensable for the purposes of Rule 19(a). *See Dunlop v. Beloit College*, 411 F.Supp. 398, 403 (W.D. Wis.1976). Moreover, the Court finds that the defendant has waived any right to raise this issue. Despite the importance of Rule 19 joinder, there is no bar to waiver of that right by a party. *See State Farm Mutual Auto Insurance Co. v. Mid-Continent Casualty Co.*, 518 F.2d 292 (10th Cir. 1975); *Process Control v. Tullahoma Hot Mix Paving Co.*, 79 F.R.D. 223 (E.D.Tenn.1977).[2] These guaranty contracts expressly provide that NAC is not required to "prosecute collection or seek to enforce or resort to any remedies against Debtor or any other party liable to Lender on account of Debtor's Liabilities or any guaranty thereof." This contractual provision would be rendered a nullity were the Court to require NAC to join a myriad of other parties in this proceeding. Indeed, the very purpose of a guaranty agreement—to provide NAC with

---

fense; indeed, defendant has raised it in his affirmative defense VII. Thus, it need not be alleged as a part of plaintiff's complaint. *See Merit Insurance Co. v. Colao*, 603 F.2d 654, 659 (7th Cir. 1979). Moreover, as the Court discusses *infra*, defendant has waived this defense.

2. Neither of the cases cited by defendant— *Evergreen Park Nursing Convalescent Home, Inc. v. American Equitable Insurance Co.*, 417 F.2d 1113 (7th Cir. 1969); *Gottlieb v. Vaicek*, 69 F.R.D. 672 (N.D.Ill.1975)—suggest that parties cannot waive by contract the right to require joinder of parties.

a simple means of compelling payment of a debt due—would be eviscerated by requiring such joinder. On the basis of a similar provision, the court in *National Acceptance Company of America v. Demes*, 446 F.Supp. 388, 389 (N.D.Ill.1977), reached the same conclusion.

■ Defendant's attacks on subject matter jurisdiction and venue are derivative of his theory with respect to joinder. He argues that since joinder of an essential party—the State of Michigan—is impossible, the Court is without subject matter jurisdiction. In addition, he suggests that joinder of all the essential parties in this action would create jurisdiction under federal substantive law, thereby rendering venue improper in this district. *Compare* 28 U.S.C. § 1391(a) (venue in diversity cases) *with* 28 U.S.C. § 1391(b) (venue in cases arising under federal law). Inasmuch as the Court rejects defendant's argument with respect to joinder, it rejects the subject matter jurisdiction and venue arguments as well.[3]

Accordingly, the plaintiff's motion for summary judgment is granted as to defendant's affirmative defenses I through VI.

## II. SUBSTANTIVE AFFIRMATIVE DEFENSES

■ Defendant's affirmative defenses VII through X all relate to the manner in which NAC disposed of certain collateral provided by Detroit Harbor. Specifically, defendant asserts that NAC's sale of the collateral would have set off his indebtedness had it been sold in a commercially reasonable manner (VII); that NAC accept-

ed a leased crane in discharge of Detroit Harbor's—and thus the defendant's—obligation (VIII); that NAC misapplied the proceeds from the sale of collateral by failing to apply it in reduction of the debts guaranteed by defendant (X); and that any waiver of the right to raise these issues is unconscionable and thus unenforceable.[4] Plaintiff, on the other hand, argues that defendant waived all these defenses and that such waiver is valid and binding.[5]

■ Contained in the guaranty contracts signed by defendant is the following clause:

> As a condition to payment or performance by Guarantor under this Guaranty, Lender is not required to (i) prosecute collection or seek to enforce or resort to any remedies against Debtor or any other party liable to Lender on account of Debtor's Liabilities or any guaranty thereof, or (ii) *seek to enforce or resort to any remedies with respect to any security interests, liens or encumbrances granted to Lender by Debtor or any other party liable to Lender on account or Debtor's Liabilities or any guaranty thereof.* Lender shall have no obligation to protect, secure or insure any of the foregoing security interests, liens or encumbrances or the properties or interests in properties subject thereto. *Guarantor's Obligations shall in no way be impaired, affected, reduced or released by reason of* (i) Lender's failure or delay to do or take any of the acts, actions or things described in this Guaranty, including, without limiting the generality of the foregoing, those

---

3. In addition, the Court notes that defendant expressly consented to venue in the district, and waived any objections thereto. Even if venue in this district otherwise would be improper, such a consent and waiver would be given binding effect. *De La Fuente v. I.C.C.*, 451 F.Supp. 867, 870 (N.D.Ill.1978); *Darby*, Unpublished Op. at 2; 1 Moore's Federal Practice ¶ 0.140[1.–3–2]. This is the case since questions of venue, as distinct from matters of jurisdiction, relate "[solely] to the convenience of litigants and as such is subject to their disposition." *Neirbo v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168, 60 S.Ct. 153, 154, 84 L.Ed. 167 (1939).

4. Affirmative defense XI merely reserves to defendant the right to raise other affirmative defenses that might come to light during the course of the proceedings. Since this action is nearly two years old and discovery has been closed, the Court believes that no additional affirmative defenses properly could be raised at this time. Thus, summary judgment is granted as to that affirmative defense.

5. At the outset, the parties concede that Illinois substantive law is binding, inasmuch as the parties consented to that choice of law in the guaranty contracts.

acts, actions and things described in this paragraph and the immediately preceding paragraph, or (ii) *the invalidity, unenforceability, loss of or change in priority or reduction in or loss of value of any of the aforesaid security interests, liens and encumbrances.* (emphasis added).

From this language it appears reasonably clear that defendant has waived his rights in the collateral provided by Detroit Harbor. ·The clause absolves NAC from responsibility for pursuing any remedies—including sale of collateral—that might accrue to the benefit of the guarantor. On language quite similar to that cited above, the court in *Demes* found that the guarantor had waived his right to a set-off from the sale of the debtor's collateral. 446 F.Supp. at 389. Moreover, since defendant has waived his right to a set-off in the collateral possessed by NAC, it necessarily has waived any interest it might have in the application of the proceeds from the sale of collateral as well as any argument with respect to the purported surrender and release by NAC.[6]

▪▪▪ Defendant, however, suggests that irrespective of the fact that NAC was not bound to pursue other remedies, once it chose to do so it was required to act for the benefit of the guarantor. Although there is no Illinois law on this point, some support for this proposition may be found in *United States v. Cawley*, 464 F.Supp. 189, 195 (E.D. Wash.1979). In reaching this result, however, *Cawley* relied on *Frederick v. United States*, 386 F.2d 481, 486 (5th Cir. 1967), wherein the guaranty agreement contained the provision that if the lender should decide to pursue other remedies, it could do so only in a manner consistent with prevailing law. There is no similar proviso in the instant guaranty agreements.

Finally, defendant argues that even assuming that waiver may be inferred from the guaranty agreements, such waiver is impermissible under Illinois law. In making this argument, defendant relies heavily on the proposition that a guarantor is a "debtor" within the meaning of Ill.Rev. Stat.1977, Ch. 26, par. 9–504(3) and 9–105(1)(d). By virtue of this status, defendant argues that guarantors are the beneficiaries of section 9–501(3), which prohibits the waiver of the rights conferred by section 9–504(3).

Although there is a dearth of precedent on this point, the Court believes that Illinois law would recognize a guarantor as a "debtor" within the meaning of sections 9–105(1)(d) and 9–504(3). The only Illinois case to consider the question, *Commercial Discount Corp. v. Bayer*, 57 Ill.App.3d 295, 14 Ill.Dec. 647, 650, 372 N.E.2d 926, 929 (1st Dist. 1978), reached this conclusion:

> [W]e believe the only reading of section 9–504(3) compatible with Illinois law is that such section deals with both the collateral and the obligation and, accordingly, the term "debtor" includes both the owner of the collateral and the obligor when they are not the same person.

This rule appears to be in accord with the majority view on the subject. *See Fedders Corp. v. Taylor*, 473 F.Supp. 961, 976 n.11 (D.Minn.1979).

Nonetheless, the Court does not believe that a guarantor's status as a debtor under section 9–504(3) compels the conclusion that a guarantor may not waive the rights accorded thereunder. First, it should be observed that the collateral in question is not owned by the guarantor. Thus, while it may be unconscionable to permit a secured

---

**6.** With respect to affirmative defense VIII, defendant also alleges that he did not intend to guaranty Detroit Harbor's liability under its lease of the crane. The guaranty agreement, however, expressly states that:

> For all purposes of this Guaranty, "Debtors Liabilities" means: (a) Debtor's prompt payment in full . . . of all indebtedness, liability or liabilities of any and every kind and nature heretofore, now or at any time or times hereafter . . . whether arising un-

der any security agreements, agreements, instruments, documents, leases. . . .
(emphasis supplied.) In light of this language, it seems evident that the lease of the crane was *within the scope of the guaranty. Defendant's* simple statement that he did not intend such to · be the case cannot overcome the plain language of the clause. *See Western Illinois Oil Co. v. Thompson*, 26 Ill.2d 287, 186 N.E.2d 285 (1962).

party such as NAC to dispose unreasonably of a debtor's property, the same cannot be said as to a guarantor, who by definition has a lesser interest in that collateral. Second, the Court must consider the general purpose of guaranty agreements. Such agreements facilitate the issuance of loans by ensuring that the lender has a ready source from which it can collect in the event of default by the debtor. To this end, it would not be unusual for a lender to require a guarantor to waive objections to payment that otherwise might be available. The Court does not believe that section 9–501(3) was intended to preclude such agreements.

Although the court in *Bayer* was not presented with a question of waiver, the court did suggest that such waiver might be possible:

> Here, defendants guaranteed full and prompt payment and further promised that it "shall be a continuing, absolute and unconditional guaranty." *There is nothing in the record to indicate that they waived or modified the notice requirement after the occurrence of default.* Consequently, we cannot say that the trial court misapprehended the law in requiring plaintiff to show compliance with the notice provision of section 9–504(3).

14 Ill.Dec. at 650, 372 N.E.2d at 929 (emphasis supplied). This language indicates that the Court well might have considered a waiver effective as to the rights of a guarantor under section 9–504(3). A number of other courts have found no impediment to a waiver of a guarantor's rights under that section of the Uniform Commercial Code. *First National Bank v. Johnson*, 553 F.2d 599, 601 (9th Cir. 1977); *Demes*, 446 F.Supp. at 389; *Cessna Finance Corp. v. Meyer*, 575 P.2d 1048 (Utah 1978); *Pruske v. National Bank of Commerce*, 533 S.W.2d 931 (Tex. Civ.App.1976). The finding in *Meyer* is particularly significant, since the Utah Supreme Court also has found that guarantors are debtors within the meaning of 9–504(3) of the Uniform Commercial Code. *See Zions First National Bank v. Hurst*, 570 P.2d 1031 (Utah 1977). The Court agrees with this line of precedent, and finds that under Illinois law waiver by a guarantor of his rights under section 9–504(3) is not unconscionable *per se.*[7] Nor does the defendant present any facts which suggest that the particular negotiations culminating in these guaranty agreements were in any way unconscionable.[8] Thus, the Court finds that defendant has waived his right in the collateral possessed by plaintiff. Accordingly, plaintiff's motion for summary judgment is granted as to affirmative defenses VII through XI.

### III. COUNTERCLAIM

In his two counterclaims, defendant seeks an accounting with respect to the manner in which NAC disposed of collateral and as well as an order compelling NAC to pursue fully all collateral securing Detroit Harbor's indebtedness prior to enforcing the debt as against defendant. As indicated above,

---

7. There is authority holding that such waivers are impermissible since they provide secured lenders with unfettered discretion as to the manner in which they dispose of collateral. *See United States v. Willis*, 593 F.2d 247, 255 (6th Cir. 1979); *United States v. Cawley*, 464 F.Supp. 189, 194–195 (E.D.Wash.1979). The Court deems it significant that both cases involved the federal government as the secured creditor. It well might be that when the government is placed in that posture, it uniformly should be held to a high standard of conduct with respect to the manner in which it disposes of collateral. The Court does not believe, however, that this prohibition of waiver should apply to private creditors who seek to enter into advantageous guaranty arrangements.

8. Indeed, it is worth noting that the defendant herein is an attorney, and is president of Southeastern Michigan International Terminals, Inc., the corporation which owns all the stock of Detroit Harbor. Thus, while the numerous waivers might appear to make the guaranty agreements one-sided, at the time of execution defendant might have had good reasons for conceding to these waivers in order that Detroit Harbor could receive its desired loans. Thus, it cannot be said that the agreements under these circumstances would have been repugnant to a "fair and honest man." *See Neal v. Lacob*, 31 Ill.App.3d 137, 334 N.E.2d 435, 459 (1st Dist. 1975).

however, defendant has waived his rights in the collateral possessed by NAC. Indeed, the guaranty contracts specifically provide that NAC is not required to pursue other remedies as a condition of seeking collection from the defendant. Thus, since defendant has no rights in the collateral, the Court finds that summary judgment in favor of the plaintiff is appropriate on the two counterclaims as well.

## IV. THIRD–PARTY COMPLAINT

■ Still pending in this Court is Wechsler's third-party complaint against Windsor-Detroit Barge, Line, Ltd. ("Windsor"). In this action, Wechsler alleges that because Windsor also signed an unconditional guaranty for Detroit Harbor's indebtedness to NAC, he is entitled to a "fair share" contribution by Windsor. The Court has grave doubts as to whether it should retain jurisdiction over this remaining portion of the case. Inasmuch as Wechsler and Windsor both hale from Michigan, the Court believes it well might be more convenient for the parties and the witnesses, as well as in the interest of justice, to transfer this case under 28 U.S.C. § 1404(a) to the appropriate federal district court in Michigan. Accordingly, the Court directs both Wechsler and Windsor to communicate to the Court by letter their respective views on transfer of venue of the third-party action within ten days of the date of this order.[9]

## V. SUMMARY

Accordingly, plaintiff's motion for summary judgment is granted in the amount of $489,409.22 plus interest. Plaintiff is granted leave to file a petition within 15 days for reasonable attorney's fees and costs pursuant to the provisions of the guaranty contracts. Within ten days after its filing, defendant may respond to the petition. Plaintiff may reply within five days to any such response. The Court's ruling on whether it will retain jurisdiction over the third-party complaint will be made after the parties have advised the Court as to their respective views. It is so ordered.

## MEMORANDUM OPINION AND ORDER ON TRANSFER OF CAUSE

This action was filed by National Acceptance Company of America ("NAC") to enforce a loan guaranty signed by James Wechsler. Thereafter, defendant Wechsler filed a third-party complaint against Windsor-Detroit Barge Line, Ltd. ("Windsor"), which had signed a similar guaranty, seeking to compel a "fair share" contribution by Windsor of the amount owed NAC. In a Memorandum Opinion and Order dated April 9, 1980, this Court granted summary judgment in favor of NAC in the amount of $489,409.22 plus interest and reasonable costs and attorney's fees. In the course of that opinion, the Court raised *sua sponte* the question of whether transfer of venue of the remaining third-party action would be appropriate, and asked the parties to inform the Court by letter of their respective views. The parties have responded, and both agree that the third-party complaint should be transferred to the United States District Court for the Eastern District of Michigan.

■ Pursuant to 28 U.S.C. § 1404(a), a district court possesses the discretion to transfer any civil action to another district court where the action originally might have been brought when to do so would be for the convenience of the parties and witnesses and in the interest of justice. Inasmuch as both Wechsler and Windsor are from Michigan, the Court believes that the interests of convenience and justice would be served by transfer of this case. As stated above, the parties both support transfer of this action. Such a consensus is a relevant consideration, as 28 U.S.C. § 1404(b) permits transfer of venue "[u]pon motion, *consent or stipulation of all parties* . . . ." (emphasis supplied).

---

**9.** There is no question that the Court possesses authority to raise on its own motion the issue of transfer of venue. *See* Wright, Miller, Cooper, Federal Practice and Procedure: Jurisdiction § 3844 at 208–209.

Moreover, the Court entertains no question about the propriety of venue in either the transferror or transferee court. Venue is proper in this district under 28 U.S.C. § 1391(a) or (b), since this claim arose out of a contract made in Illinois. *See National Acceptance Company of America v. Wechsler*, Civil Case No. 78 C 2115 (N.D.Ill., January 18, 1979) (Minute Order). Moreover, venue would be appropriate in the Eastern District of Michigan under 28 U.S.C. § 1391(c), as defendant Windsor is a corporation doing business within that district.

Accordingly, the Clerk of this Court is directed to transfer this case to the United States District Court for the Eastern District of Michigan. It is so ordered.