HARLINGTON WOOD, Jr., Circuit Judge.
 

 In this dispute between a seller/guarantor and a creditor, we must decide who shall bear the burden of an improper filing that failed to secure an interest in the collateral, the equipment sold. We hold that although the creditor was responsible for the faulty filing, the seller/guarantor remained liable under the with-recourse agreement due to its warranty of proper filing.
 

 I.
 

 Advance Process Supply Company is a Chicago-based manufacturer of screen printing equipment. On August 10, 1981, Advance sold some equipment to Steel City Screen Printers of Canonsburg, Pennsylvania, under an installment sale contract. Under the contract, Steel City was to pay $16,000 as a down payment and obtain financing for the balance of $43,404. Litton Industries Credit Corporation agreed to provide the financing by taking an assignment of the sales contract without recourse to Advance. On September 23, 1981, Litton’s branch manager obtained from Advance’s office UCC-1 financing statements signed by Advance. The next day, Advance’s credit manager mailed Litton a copy of the installment sale contract with a request that Litton “be sure that a copy of
 
 *1078
 
 this contract accompanies your filing of the UCC-1 forms with the state.”
 

 Litton filed the forms with the Pennsylvania Secretary of State on September 29, 1981, but neglected to file with the appropriate county prothonotary,
 
 [1]
 
 as necessary under Pennsylvania law to secure an interest in the collateral. The security interest thus was not perfected.
 

 On October 5, 1981, Litton informed Advance that it now wanted the assignment to be with recourse to Advance for one year. Advance agreed, and the formal assignment agreement was executed on October 28, 1981, on a form supplied by Advance. The assignment agreement provided that Advance would guarantee payment to Litton for one year. If Steel City defaulted within that time, Advance would enforce the security interest in the equipment, sell the equipment, and use the proceeds to repay Litton. Advance warranted that the contract and any applicable notices and statements “have been correctly filed” as necessary to perfect Advance’s interest in the collateral. Advance also “unconditionally and absolutely” guaranteed payment to Litton, and waived notice of and consented to any subordinating, compromising, discharging, or releasing of any security “in such manner and at such times as [Litton] may deem advisable” without impairing Advance’s liability for payment in full.
 

 The purchaser, Steel City, went into involuntary bankruptcy on March 8, 1982. Under the assignment agreement, Advance became immediately liable for repayment to Litton of the full amount of Litton’s loan to Steel City. When Advance attempted to repossess the equipment, it discovered that Litton’s filing of the financing statements was inadequate to protect the security interest in the equipment. The equipment remained in Steel City’s bankruptcy estate.
 

 Litton demanded payment in full from Advance pursuant to the assignment agreement. Advance’ refused, claiming Litton had impaired the collateral and discharged Advance. Advance sought declaratory relief in an Illinois state court; Litton removed the action to the federal district court for the Northern District of Illinois under its diversity jurisdiction and counterclaimed for the amount due, plus attorney’s fees and expenses. The parties had provided in the assignment agreement that Illinois law would govern any dispute.
 

 The district court granted summary judgment for Litton, finding that Advance had warranted that the necessary papers were filed correctly and had consented unconditionally to Litton’s impairment of collateral.. The district court awarded Litton $48,546. Advance appeals.
 

 II.
 

 Advance’s principal argument on appeal focuses on its construction of the “deem advisable” language in the assignment agreement, which Advance argues limited its consent to impairment of collateral to Litton’s intentional actions.
 
 [2]
 
 Advance claims it did not consent to a negligent action such as the faulty filing here, and thus Litton unjustifiably impaired the collateral without its consent, which would discharge Advance under the Uniform Commercial Code (Code) as enacted in Illinois.
 
 [3]
 

 We need not reach the issue of whether the “deem advisable” clause condi
 
 *1079
 
 tioned Advance’s consent to impairment of collateral. Elsewhere in the assignment agreement, Advance unconditionally warranted that the applicable statements had been filed correctly.
 
 [4]
 
 Although we must construe the guarantee agreement strictly in favor of the guarantor,
 
 see Vilter Manufacturing Co. v. Loring,
 
 136 F.2d 466, 468 (7th Cir.1943);
 
 McHenry State Bank v. Y & A Trucking, Inc.,
 
 117 Ill.App.3d 629, 633, 73 Ill.Dec. 485, 488, 454 N.E.2d 345, 348 (1983), we also must view the assignment agreement as a whole,
 
 see Laurentide Finance Corp., of America v. Capitol Products Corp.,
 
 392 F.2d 444, 447 (3d Cir.1968);
 
 Zannis v. Lake Shore Radiologists, Ltd.,
 
 73 Ill.App.3d 901, 906, 29 Ill.Dec. 569, 572, 392 N.E.2d 126, 129 (1979). The “deem advisable” language in no way can be construed to condition the warranty of proper filing here. Further, the agreement provided other reassurances that Advance’s guarantee was unconditional.
 
 [5]
 
 The agreement must be construed to bind Advance to its warranty of proper filing.
 

 We thus hold that Advance agreed to bear the burden of Litto'n’s negligence. While that result may seem harsh, we note that when Litton undertook to file the statements, it presumably believed that it was protecting its own interest in the collateral because, at that stage of the negotiations, the parties were discussing a no-recourse agreement. More than three weeks before the assignment agreement was executed, Litton informed Advance that it wanted the agreement to be with recourse for one year, which gave Advance sufficient time to verify proper filing. Advance supplied the form for the assignment agreement, which included the warranty of proper filing. We must construe an instrument against its drafter.
 
 See National Acceptance Co. of America v. Demes,
 
 446 F.Supp. 388, 391 (N.D.Ill.1977). Here, as in
 
 Demes,
 
 the agreement’s allocation of risk concerning perfection of the security interest was plain on its face and, “however justifiable [Advance’s] expectations that [Litton] should proceed with care to perfect its security interests properly, these expectations were not protected by the guarantee agreement they signed.”
 
 Id.
 

 Advance argues that despite its warranty of proper filing, evidence of trade usage
 
 [6]
 
 and course of dealing
 
 [7]
 
 would show that Litton in fact was responsible for proper filing. No such evidence was admitted because the district court, concluding that there was no genuine issue of material fact, granted summary judgment to Litton on the basis of the agreement alone.
 

 The Code provides that express contract terms control trade usage and course of dealing where they are inconsistent,
 
 [8]
 
 but trade usage and course of dealing may be used to explain or supplement the
 
 *1080
 
 express terms of an unambiguous contract, complete on its face.
 
 See
 
 Ill.Rev.Stat. ch. 26, § 2-202 (1983);
 
 [9]
 

 Columbia Nitrogen Corp. v. Royster Co.,
 
 451 F.2d 3, 9-10 (4th Cir.1971);
 
 see also
 
 J. White & R. Summers,
 
 Uniform Commercial Code
 
 99-100 (2d ed. 1980). The assignment agreement apparently was intended by the parties to be a final expression of their agreement on the terms contained therein, and appears to be unambiguous and complete on its face. Evidence that trade usage and course of dealing would place the burden of proper filing on the creditor rather than the guarantor, and that this was the true intention of the parties, would contradict rather than explain or supplement Advance’s express warranty of proper filing, and the district court correctly excluded such evidence.
 

 Advance asserts three other arguments against enforcement of the with-recourse agreement. First, Advance argues that Article 9 of the Code applies to void any consent to Litton’s negligent filing. Assuming that the equipment sale was a secured transaction governed by Article 9, Advance argues that Litton was required by Article 9 to use reasonable care to preserve the collateral, which included the duty to record statements as necessary to perfect security interests.
 
 See
 
 Ill.Rev.Stat. ch. 26, § 9-207(1) (1983).
 
 [10]
 
 Advance then argues that the duty of reasonable care imposed by section 9-207(1) cannot be waived.
 
 See
 
 Ill.Rev.Stat. ch. 26, § 1-102(3);
 
 [11]
 

 Congress Financial Corp. v. Sterling-Coin Op Machinery Corp.,
 
 456 F.2d 451, 455-56 (3d Cir.1972).
 

 Section 9-207(1) may be used to define unjustifiable impairment of collateral under section 3-606(l)(b),
 
 see
 
 Ill.Ann.Stat. ch. 26, § 3-606 (Smith-Hurd 1963) (Code Comment 5), and to show that failure to perfect a security interest in collateral is an unjustifiable impairment.
 
 See, e.g., McHenry State Bank v. Y & A Trucking, Inc.,
 
 117 Ill.App.3d 629, 633, 73 Ill.Dec. 485, 488, 454 N.E.2d 345, 348 (1983) (citing cases); J. White & R. Summers,
 
 Uniform Commercial Code
 
 525-26 (2d ed. 1980). Section 3-606 “unjustifiable impairment” discharges a guarantor, however, only “without such party’s consent.” Under Advance’s reading of the Code, the phrase “without such party’s consent” would be meaningless because a party would never be able to consent to an
 
 unjustifiable
 
 — i.e., unreasonable or negligent — impairment. Of course courts have held that section 3-606(l)(b) consent may be applied to negligent impairment.
 
 See, e.g., National Acceptance Co. of America v. Demes,
 
 446 F.Supp. 388 (N.D.Ill.1977);
 
 Ishak v. Elgin National Bank,
 
 48 Ill.App.3d 614, 6 Ill.Dec. 630, 363 N.E.2d 159 (1977).
 
 See also Ford Motor Co. v. Lototsky,
 
 549 F.Supp. 996,1005 n. 34 (E.D.Pa.1982) (under § 3-606, guarantor may consent to pre-default impairment of collateral although it may not waive post-default defense of commercial reasonableness in disposition of collateral). Advance clearly and unconditionally “consented” to an “unjustifiable impairment of collateral” through negligent perfection of the security interest when it warranted proper filing, but no obligation of reasonableness and
 
 *1081
 
 care was disclaimed in contravention of section 1-102(3). The parties agreed that Advance would assume complete legal responsibility for securing an interest in the collateral. Any obligation of reasonableness thus was on Advance’s, not Litton’s, part.
 
 Cf. Congress Financial,
 
 456 F.2d at 456 (party that contracts out of duty to file may not by contract exculpate self from own lack of reasonable care if it undertakes filing).
 

 Advance next argues that Litton, having undertaken to file the statements, is estopped from asserting Advance’s warranty of proper filing. This argument would suggest that a party’s warranty is virtually worthless where the other party is involved in performing the warranted act. The parole evidence rule excludes evidence offered to show that an absolute obligation is conditional.
 
 See Main Bank of Chicago v. Baker,
 
 86 Ill.2d 188, 199, 56 Ill.Dec. 14, 19, 427 N.E.2d 94, 99 (1981). The assignment agreement being a complete and final expression of the agreement between the parties, the parole evidence rule excludes evidence that the parties earlier had agreed that Litton would undertake the filing as offered to show that the later formal agreement did not represent the parties’ true intentions. Knowing that Litton already had undertaken to file the statements when the agreement was entered, Advance could have shifted the warranty of proper filing to Litton, or could have ascertained whether Litton indeed had filed correctly. We reject Advance’s estoppel argument.
 
 Cf. Congress Financial,
 
 456 F.2d at 455-56 (party that contracts out of duty to file is estopped from denying waiver of that contract provision by its silence in face of other party’s reliance on its endeavor to file).
 
 [12]
 

 Finally, Advance argues that the relationship between itself and Litton should be governed by the common law of agency, with Litton acting as Advance’s agent for the filing of the statements. Advance claims that Litton, having breached its duty to Advance, its principal, is liable for the expense of the breach. Evidence of a common law agency would be parole evidence extrinsic to the complete expression of the parties’ agreement in the assignment agreement. Any common law agency between the parties was superseded by the express assignment agreement, and that agreement governs their relationship with regard to this matter.
 

 III.
 

 We affirm the district court’s grant of summary judgment for Litton.
 

 [1]
 

 . A prothonotary is "an officer who officiates as principal clerk of some courts.” Black's Law Dictionary 1101 (5th ed. 1979).
 

 [2]
 

 . The assignment agreement provided in pertinent part:
 

 The undersigned [Advance] also waives notice of and consents to ... Assignee’s [Litton's] accepting partial payments thereon or settling, subordinating, compromising, compounding, discharging or releasing any of the same in such manner and at such times as Assignee may deem advisable, without in any way impairing or affecting the undersigned’s liability for the full amount thereof.
 

 [3]
 

 . (1) The holder discharges any party to the ’ instrument to the extent that without such party’s consent the holder (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
 

 Ill.Rev.Stat. ch. 26, § 3-606(l)(b) (1983).
 

 [4]
 

 . The assignment agreement provided in pertinent part:
 

 The undersigned warrants and represents to Assignee that: ... the Contract and any applicable notices and statements relating thereto have been correctly filed, recorded and given as to perfect the undersigned's title and interest in the Goods to be superior to all claims of all persons, ....
 

 [5]
 

 . The assignment agreement also provided:
 

 The undersigned warrants and represents to Assignee that: ... the payment thereof is not contingent or conditioned on the fulfillment of any Contract, condition or warranty, past or future, express or implied; _ The undersigned hereby unconditionally and absolutely guarantees to Assignee the prompt payment in full, when due or declared due and at all times hereafter of all monies owing by Buyer under the contract ....
 

 [6]
 

 . A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court.
 

 Ill.Rev.Stat. ch. 26, § 1-205(2) (1983).
 

 [7]
 

 . A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.
 

 Ill.Rev.Stat. ch. 26, § 1-205(1) (1983).
 

 [8]
 

 . The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as
 
 *1080
 
 consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade.
 

 Ill.Rev.Stat. ch. 26, § 1-205(4) (1983).
 

 [9]
 

 . Terms ... set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) by course of dealing or usage of trade ....
 

 Ill.Rev.Stat. ch. 26, § 2-202 (1983).
 

 [10]
 

 . A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.
 

 Ill.Rev.Stat. ch. 26, § 9-207(1) (1983).
 

 [11]
 

 .The effect of provisions of this Act may be varied by agreement, except as otherwise provided in this Act and except that the obligations of good faith, diligence, reasonableness and care prescribed by this Act may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.
 

 Ill.Rev.Stat. ch. 26, § 1-102(3) (1983).
 

 [12]
 

 .
 
 Congress Financial
 
 may be distinguished from the case at bar on several grounds. First, there the creditor supplied the form in which the guarantor warranted compliance with filing requirements, while here the guarantor supplied the form. In the
 
 Congress Financial
 
 assignment agreement, the guarantor warranted proper filing and absolved the creditor of responsibility for lack of due care in any filing it might undertake; here, the guarantor did only the former. A question arose whether the warranty of proper filing could apply to the judgment note at issue there, because, as the court noted, there were sound reasons to delay filing until after the assignment agreement was executed. Here, the filing attempt was completed before the with-recourse assignment was executed.