**In re John L. MEYER and Beth A. Meyer, Debtors.**

**No. 03–34295–JES.**

United States Bankruptcy Court, E.D. Wisconsin.

Sept. 15, 2005.

Gary D. Koch, Esq., Milwaukee, WI, for Debtors.

Todd R. Korb, Esq., Milwaukee, WI, for North Shore Bank, claimant.

### DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This dispute involves the amount of North Shore Bank's claim against the debtors in this chapter 13 case resulting

from the debtors' early termination of their motor vehicle lease. It has been presented upon a stipulation of facts, cross motions for summary judgment, and briefs.

## BACKGROUND

On August 31, 2002, the debtors, as lessees, entered into a 48–month motor vehicle lease of a 2002 Volkswagen Cabrio with Ernie von Schledorn Pontiac/Buick Volkswagen as lessor. This lease was thereafter assigned by the lessor to North Shore Bank. Monthly lease payments were $355.09 starting in September, 2002. After 12 months, the debtors terminated this lease and surrendered the vehicle to North Shore Bank, leaving 36 monthly lease payments remaining when the lease was terminated.

On September 22, 2003, the debtors filed a petition in bankruptcy under chapter 13. North Shore Bank filed its proof of claim as an unsecured creditor in the amount of $6,857.14.[1]

A portion of North Shore Bank's damages, which is contained in paragraph 17(a) of the motor vehicle lease, is not in dispute. What is in dispute is the remaining portion of the damages in paragraph 17(b). The parties agree that there are two options for computing damages in paragraph 17(b). They disagree, however, as to who has the right to select which option should be used and how damages under these options are to be computed.

Paragraph 17 of the motor vehicle lease (Early Termination Without Purchase) states:

**17. EARLY TERMINATION WITHOUT PURCHASE.** You may terminate this Lease at any time. If you termi-

---

1. North Shore Bank states in its brief that its total loss is $6,699.14. This differs in amount from the sum set forth in its proof of claim.

nate before the Lease End Date, you agree to pay us an Early Termination obligation which is an amount equal to the sum of:

(a) Any unpaid monthly payments that have accrued as of the date you terminate this Lease; any other amounts arising under the terms of this Lease (other than excess mileage charges) that are not prohibited under the Wisconsin Consumer Act or chapter 429 of the Wisconsin Statutes; any official fees and taxes imposed in connection with the termination of this Lease; an early termination fee in an amount equal to one Monthly Payment; and the reasonable costs of retaking, storing, preparing for sale and selling the Vehicle, except for any cost that could not be charged under section 422.413 of the Wisconsin Statutes in the event of a default; and

(b) Any positive amount determined by subtracting the Realized Value from any of the following:

(1) The sum of the balance subject to a rent charge and the rent charge earned in advance for the computational period in which the early termination occurs, calculated in accordance with the constant yield method or any other generally accepted accounting principle.

(2) An amount determined in accordance with generally accepted actuarial principles under which the rent charge is calculated on the adjusted capitalized cost for the time outstanding.

The parties agree on the following damages in paragraph 17(a):

| Damage Claim | Amount |
|---|---|
| Early termination fee | $355.09 |
| Reasonable costs of retaking, storing, preparing for sale and selling the vehicle | $418.79 |

However, the difference is de minimis and does not affect the court's ruling with respect to this dispute.

The parties also agree that a $350.00 "disposition fee" (contained in paragraph 5 of the lease and which represents an amount to be paid by the lessee if the lessee decides not to purchase the vehicle) is also a proper element of damages. The combined sum of these agreed damages under paragraphs 17(a) and 5 is **$1,123.88.** This leaves for the court's consideration the disputed damages in paragraph 17(b).

### NORTH SHORE BANK'S ANALYSIS OF PARAGRAPH 17(b)

North Shore Bank contends that it is entitled to the damages contained in the option under paragraph 17(b)(2) and that its damages under this provision are as follows:

| | |
|---|---|
| Adjusted capital cost (per paragraph 8(c)) | $ 22,191.76 |
| Less 12 paid lease payments (covering September, 2002, through and including August, 2003) | − 4,261.08 |
| | $ 17,930.68 |
| Less selling price of vehicle (realized value) | − 12,500.00 [2] |
| **Damage loss under 17(b)(2)** | $ 5,430.68 |

Under this approach, by adding the damages of $5,430.58 (under paragraph 17(b)(2)) to the damages of $1,123.88 (under paragraphs 17(a) and 5), North Shore Bank states that its total claim is $6,554.56.

North Shore Bank further contends that the option in paragraph 17(b)(2), rather than 17(b)(1), must be utilized because, if 17(b)(2) is not used, "North Shore Bank will not be made whole."

### DEBTORS' ANALYSIS OF PARAGRAPH 17(b)

Debtors submit that the option in paragraph 17(b)(1) should be utilized, and it results in the following damages for early termination:

| | |
|---|---|
| 36 remaining monthly unpaid lease payments | $ 12,783.24 [3] |
| Less selling price of vehicle (residual value) | − 12,500.00 |
| **Damage loss under 17(b)(1)** | $ 283.24 |

Under this approach, by adding $283.24 (under paragraph 17(b)(1)) to the damages of $1,123.88 (under paragraphs 17(a) and 5), North Shore Bank's total claim is $1,407.12.

Debtors argue that using paragraph 17(b)(1) to compute the early termination damages avoids the "extensive calculations on the time value of money" involved under paragraph 17(b)(2). The debtors further submit that North Shore Bank's computations for damages in paragraph 17(b)(2) are flawed. Debtors contend that the "adjusted capitalized cost" was erroneously computed by North Shore Bank as of the time the lease was entered into, instead of computing the adjusted capitalized cost *for the time outstanding* (underlining added for emphasis) as required under paragraph 17(b)(2). Assuming, but without deciding, that debtors' interpretation of paragraph 17(b)(2) is correct and computing the adjusted capitalized cost by

**2.** Although North Shore Bank in its brief computes the selling price of the vehicle at $12,355, rather than $12,500, at oral argument, counsel for North Shore Bank acknowledged this was an error and that the selling price is $12,500. That is because the $145.00 difference in these two amounts resulted from damages which are already included in that portion of the damages in paragraph 17(a) dealing with reasonable costs of retaking, storing, preparing for sale, and selling the vehicle.

**3.** $12,783.24 is "the balance subject to a rent charge" as is provided in paragraph 17(b)(1). "Rent charge earned in advance," also provided in paragraph 17(b)(1), refers to any unpaid lease payments before the lease was terminated and does not apply because there were no unpaid lease payments during this period.

using debtors' analysis produces a different result as follows:

Adjusted capitalized cost (as further adjusted for the 36 months remaining after the lease was terminated) (36 months divided by 48 months multiplied by $23,191.76)    $ 16,643.82

Less 12 paid monthly lease payments    − 4,261.08

   $ 12,382.74

Less selling price of vehicle (realized value)    − 12,500.00

**Damage loss under 17(b)(1)**    $ (117.26)

Under this approach, there is no resulting loss under paragraph 17(b).

### CONCLUSION

As between the two options in paragraphs 17(b)(1) and 17(b)(2), the court is satisfied that paragraph 17(b)(1) presents the more straightforward approach in arriving at damages for early lease termination. Although the damages in paragraph 17(b)(2) are capable of being computed, it is a much more complicated procedure and includes a determination of the meaning of "constant yield method or any other general accepted accounting principle" as well as wrestling with how to compute "adjusted capitalized cost." However, that determination is unnecessary because the court is persuaded by the debtors' argument that, when a document is ambiguous, it must be strictly construed against its drafter. This is a fundamental rule of construction. *Shelby County State Bank v. Van Diest Supply Co.*, 303 F.3d 832 (7th Cir.2002); *Advance Process Supply v. Litton Industries Credit*, 745 F.2d 1076 (7th Cir.1984); *Crescent Corp. v. Proctor & Gamble Co. & Huber, Hunt & Nichols, Inc.*, 898 F.2d 581 (7th Cir.1990); *In re Zersen*, 189 B.R. 732 (Bankr.E.D.Wis.1995). The motor vehicle lease in this case is silent on who, as between the lessor and lessee, has the right to choose the early termination damages option in computing damages under paragraph 17(b). Because the lease is unclear with respect to this matter, it is the lessee who has the right to select that option as between paragraph 17(b)(1) and paragraph 17(b)(2) because North Shore Bank stands in the shoes of the lessor as drafter of the lease. Since the lessee has chosen the option under paragraph 17(b)(1), the court holds that the full measure of North Shore Bank's damages in this case is **$1,407.12.**

The debtors' motion for summary judgment is **GRANTED.**

North Shore Bank's motion for summary judgment is **DENIED.**