COMMERCIAL DISCOUNT CORPORATION, Plaintiff-Appellant, *v.* GERALD BAYER *et al.*, Defendants-Appellees.

First District (5th Division)    No. 77-218

Opinion filed January 13, 1978.

Richard D. Glickman and Joel S. Ostrow, both of Chicago, for appellant.

Lewis W. Schlifkin and Edward A. Berman, Ltd., both of Chicago, for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff (secured party) appeals from the trial court's direction of the verdict in favor of defendants (guarantors) and presents the following issues for review: (1) whether a secured party is required to give guarantors notice of a default sale; and (2) whether the trial court erred in directing the verdict at the close of plaintiff's case.

In March, 1969, plaintiff purchased a plastic injection molding machine for $15,500 and leased it to SAS Injection Molding, Inc., for five years with a total rental fee of $20,925. As a condition of and to facilitate this transaction, defendants guaranteed payment of the fee. SAS accepted delivery of the machine and made a few payments and then, in the autumn of 1969, defaulted. Sometime after default, plaintiff repossessed the machine, which was then resold in April, 1970.

Plaintiff brought this action to recover from defendants the difference between the unpaid balance of the rental fee and the proceeds of the sale of the collateral—a deficiency of $18,032. Defendants answered, denying that a deficiency was due and owing as plaintiff's sale of the collateral did not comply with applicable provisions of the Uniform Commercial Code. Consequently, plaintiff's evidence concerned its actions subsequent to default, including the notice given to defendants and the procedures employed in consummating the sale.

After repossessing the machine, plaintiff drafted a notice stating that the collateral was to be sold at a private sale which would take place on January 29, 1970, at its offices in Los Angeles, California. The notice was admitted into evidence but, due to the lack of foundation, evidence of its mailing was not admitted. Defendants Gerald Bayer and Earl Schwarz were called under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60), and each admitted receiving the notice—but after January 29, the sale date mentioned in the notice. In addition, Schwarz testified that after hearing from another source that the machine had been repossessed, he telephoned plaintiff on January 19 and offered to purchase

it for $12,000. This offer was refused, and he was told that any offer of less than $16,000 was unacceptable. No time or place was given regarding a proposed sale to another during this telephone conversation.

Sometime in January, 1970, plaintiff arranged with Harold Rowen, who was in the business of buying, selling and appraising machinery, to store and clean the machine. After the machinery had been on Rowen's premises a month or more, he was requested to find a buyer for it. Although Rowen had qualified as an expert concerning the valuation of machinery on several occasions in unrelated proceedings, he repeatedly testified that he had no expertise in the plastic injection molding machinery field. Consequently, he consulted several unidentified sources and, based upon their opinions, he valued the machine in question at $4,500 (because a newer model was reported to be more desirable in terms of increased speed and decreased operating expense).

Rowen then placed an advertisement in a trade journal on two occasions. He could not remember the name of the journal, now defunct, nor could he remember the contents of the ad—except that it stated no price; but, rather, invited offers. The journal had a circulation of 25,000 in 11 western States, with specialized subscribers described only as not "the general machine shop trade." Rowen also advertised the machinery in the Los Angeles Times on eight occasions, but again could not remember the details of the ad—except that it invited offers without quoting an asking price. Meanwhile, the machine was on display at his place of business, but he admitted that the type of customer interested in such machinery did not regularly frequent his premises unless they happened to be there in search of another type of equipment and noticed the molder on display. Receiving no response from the ads or the display of the machine, Rowen then solicited an offer from a Chicago business concern which eventually purchased it for $3,250. After deducting Rowen's fee and expenses, plaintiff realized $2,750.

At the close of plaintiff's case, a verdict was directed in favor of defendants. Although plaintiff in its complaint alleged that the sale was in conformity with the California Commercial Code, its post-trial motion asserted that the judgment was contrary to the provisions of the Illinois Commercial Code.

OPINION

■■ Plaintiff first contends that because the guarantee contract provided that California law was applicable, it is that State's adoption of the Uniform Commercial Code which governs this cause. We disagree. In a civil bench trial, the failure to include an issue in a post-trial motion does not preclude its consideration by a reviewing court. (*City of Chicago v. Mid-City Laundry Co.* (1972), 8 Ill. App. 3d 88, 289 N.E.2d 233.) Such a

rule, however, does not relieve a litigant from raising issues of fact and law in the trial court (Ill. Ann. Stat., ch. 110A, par. 366, Historical and Practice Notes, at 270 (Smith-Hurd 1976)), and "if there has been a misapprehension of the law in the trial court, the place to correct that misapprehension is in that court * * *" (*Fulwider v. Fulwider* (1972), 8 Ill. App. 3d 581, 583, 290 N.E.2d 264, 265). Moreover, a theory inconsistent with that which is espoused in the trial court may not be considered on review. (*Woman's Athletic Club v. Hulman* (1964), 31 Ill. 2d 449, 202 N.E.2d 528.) We believe that by filing a post-trial motion which alleged the judgment was erroneous upon the singular theory that its conduct had complied with Illinois law, plaintiff has abandoned the application of California law to the facts in this cause. Therefore, we shall review the merits of the case in accord with applicable provisions of the Illinois Uniform Commercial Code—Secured Transactions (Ill. Rev. Stat. 1975, ch. 26, par. 9—101 *et seq.* (the Code)).

Plaintiff next contends that under the Code, a guarantor is not entitled to notice of a default sale. Again, we disagree.

"Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market * * * reasonable notification of the time * * * after which any private sale * * * is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale." (Ill. Rev. Stat. 1975, ch. 26, par. 9—504(3).)

The Code defines the term "debtor" as:

"[T]he person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral * * *. Where the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of the Article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires." (Ill. Rev. Stat. 1975, ch. 26, par. 9—105(1)(d).)

Whether, within the meaning of section 9—504(3), the term "debtor" includes the obligor who does not own the collateral is a question of first impression in Illinois.

Plaintiff relies on *Brinson v. Commercial Bank* (1976), 138 Ga.App. 177, 225 S.E.2d 701, and *New Haven Water Co. Employees Credit Union v. Burroughs* (1973), 6 Conn. Cir. Ct. 709, 313 A.2d 82, to support the proposition that guarantors are not debtors within the perview of section 9—504(3). Also cited is *A. J. Armstrong Co., Inc. v. Janburt Embroidery Corp.* (1967), 97 N.J. Super. 246, 234 A.2d 737, which held that an accommodation endorser is not required to be given notice under 9—

504(3). This opinion, however, was later distinguished in *T&W Ice Cream, Inc. v. Carriage Barn, Inc.* (1969), 107 N.J. Super. 328, 333, 258 A.2d 162, 165, which required that notice be given where the guaranty contract contains the following language:

> " 'Payment and performance of the above obligation absolutely, unconditionally and continuously guaranteed.' "

The court reasoned that under such an agreement, the guarantor was a debtor within the meaning of section 9—504(3). Accord, *Hepworth v. Orlando Bank & Trust Co.* (Fla. App. 1975), 323 So.2d 41.

■■ Plaintiff attempts to distinguish the rule requiring notice to guarantors by asserting its applicability only where the guarantors are involved in the day to day operations of the owner of the collateral. We find no such requirement in *Hepworth v. Orlando Bank & Trust Co.*, and our reading of *T & W Ice Cream, Inc. v. Carriage Barn, Inc.* indicates that, while such a factor was present, it was not dispositive. In any event, while Illinois courts have not addressed the precise question before us, it has been held that the failure to comply with the requirements of section 9—504(3) may release the debtor from any deficiency arising after the resale of the collateral. (*General Foods Corp. v. Hall* (1976), 39 Ill. App. 3d 147, 349 N.E.2d 573; *Tauber v. Johnson* (1972), 8 Ill. App. 3d 789, 291 N.E.2d 180; *Morris Plan Co. v. Johnson* (1971), 133 Ill. App. 2d 717, 271 N.E.2d 404; Ill. Rev. Stat. 1975, ch. 26, par. 9—501(1).) Viewed in this light, we believe the only reading of section 9—504(3) compatible with Illinois law is that such section deals with both the collateral and the obligation and, accordingly, the term "debtor" includes both the owner of the collateral and the obligor when they are not the same person. Ill. Rev. Stat. 1975, ch. 26, par. 9—105(1)(d).

■■ Here, defendants guaranteed full and prompt payment and further promised that it "shall be a continuing, absolute and unconditional guaranty." There is nothing in the record to indicate that they waived or modified the notice requirement after the occurrence of default. Consequently, we cannot say that the trial court misapprehended the law in requiring plaintiff to show compliance with the notice provision of section 9—504(3).

Plaintiff's final contention is that it complied with the provisions of the Code in disposing of the collateral. We cannot agree.

■■ In addition to requiring notice, section 9—504(3) provides that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." (Ill. Rev. Stat. 1975, ch. 26, par. 9—504(3).) In determining the reasonableness of a particular disposition, the Code further provides:

> "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by

the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner." (Ill. Rev. Stat. 1975, ch. 26, par. 9—507(2).)

The burden of proving commercial reasonableness is upon the secured party. (*Morris Plan Co. v. Johnson.*) The rule was succinctly stated in *General Foods Corp. v. Hall* (1976), 39 Ill. App. 3d 147, 153, 349 N.E.2d 573, 576-77:

"The failure to provide adequate notice does not necessarily bar a deficiency judgment, but it puts an additional burden on the creditor to rebut a presumption that the secured collateral is worth at least the amount of the debt and of proving the amount actually collected at the sale of the collateral was commercially reasonable. [Citation.]"

■■ ■ Here, while Schwarz and Bayer established that notice was sent, each testified that he received it well after the date of the sale. While the secured party need not prove receipt, it must establish when the notice was sent so that a determination may be made as to whether it was dispatched within a commercially reasonable time prior to the date after which a private sale is to be made. (*Tauber v. Johnson.*) Having failed to introduce any evidence as to when the notice was sent, plaintiff's notice cannot be viewed as commercially reasonable.

This brings us to the question as to whether plaintiff rebutted the presumption that the collateral was worth the amount of indebtedness. In this regard, Rowen testified that in his opinion the collateral was worth not in excess of $4,500. However, he stated that he was neither an expert nor a dealer in the field of plastic injection molding machines and that his opinion was based entirely upon the opinions of unidentified sources, with no evidence introduced as to their qualifications to render opinions on the value of the machine in question.

Moreover, the record reveals no evidence of a recognized market for the sale of such machines nor of a price current in any market at the time of sale. While Rowen opined that the steps he had taken to find a buyer were commercially reasonable, he admitted that he did not regularly deal in this type of machinery and, in fact, that the molding machine in question was the only one he had ever bought or sold. Furthermore, he testified that he could not remember the contents of the advertisements, except that no price was stated and that only by happenstance would someone interested in such a machine see it on his premises.

A directed verdict is proper where the evidence, when viewed in the light most favorable to the nonmovant, is so deficient that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Here, it appears to us that plaintiff wholly failed to prove either the date upon which notice was sent, a value of the machine other than the amount of indebtedness, or that commercially reasonable procedures were used in effecting the sale. Thus, we cannot say that a verdict in its favor could ever stand, and therefore we do not believe that the trial court erred in directing a verdict in defendants' favor.

We would note further that the California adoption of the Code as it relates to the facts of this case does not, in our opinion, differ materially from the Illinois adoption. Consequently, had this case been decided under the California adoption, the result would have been the same.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.