STATE NATIONAL BANK OF EVANSTON, Plaintiff and Counterdefendant-Appellee, *v.* NORTHWEST DODGE, INC., Defendant and Counterplaintiff-Appellant.

First District (5th Division)   No. 79-550

Opinion filed April 18, 1980.—Modified on denial of rehearing July 11, 1980.

Mitchell, Russell and Kelly, of Chicago (Thomas J. Russell and Cyril J. Watson, of counsel), for appellant.

Lawrence Friedman, of Chicago (Wayne M. Waller, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Counterplaintiff, Northwest Dodge, Inc. (hereafter Dodge), appeals an adverse judgment in its counterclaim that counterdefendant, State National Bank of Evanston (hereafter State Bank), had failed to comply with certain provisions of a general dealer agreement (hereafter Agreement) covering the purchase of retail installment contracts on recreational vehicles. The trial court's judgment that State Bank had complied with the provisions of the Agreement was based on its finding that Dodge was not an article 9 debtor (Ill. Rev. Stat. 1975, ch. 26, par. 9—105(1)(d)) under terms of the Agreement. The sole issue presented on appeal is whether Dodge is an article 9 debtor under the terms of the Agreement. We reverse and remand.

The facts in the present case have been stipulated to by the parties. In February of 1976, State Bank filed suit against Dodge claiming that Dodge had failed to perform its obligations under a contract covering the retail sale of automobiles to the general public. On September 20, 1977, Dodge counterclaimed that State Bank had not performed its obligations under the Agreement by failing to pay Dodge from a dealer reserve fund (hereafter reserve fund) as required by the Agreement. In Dodge's prayer for relief, it requested judgment in the amount of those funds due under the Agreement.

The Agreement entered into on March 9, 1973, provided that Dodge would sell to State Bank, "from time to time," retail installment contracts on recreational vehicles purchased from Dodge. In return, State Bank promised to pay valuable consideration and a participation of 3% per annum of the amount financed by the customer. According to the terms of addendum "C" to the Agreement, the participation of 3% per annum was to be distributed so that 2% was to be paid in cash at the time of purchase and 1% was to be placed in the reserve fund. The reserve fund's terms, which are vital to this appeal, are:

"You may pay to us periodically from the reserve fund, commencing March 1, 1974, and as at the end of each 3 month thereafter so long as we continue to sell accounts to you and are not in default, the reserves in said fund on each such settlement date in excess of 10 per cent of the balances of accounts outstanding as at the end of the month prior to such settlement date. *You may charge to the reserve fund, or we will pay you on demand* (i) our proportionate share of all refunds allowed on prepayment of accounts, (ii) the balance owing on accounts on which 2 or more installments are delinquent; and (iii) the balance owing on accounts which any warranty is breached or which become uncollectible for any reason." (Emphasis added.)

On March 1, 1974, the balance in the reserve fund was $14,853.01 and

on May 31, 1974, the balance was $23,250.73. Sometime after May 31, an additional sum of $1,352.59 was credited to the reserve fund, but also during this period there was a sum of $24,148.09 which was debited to the fund. The $24,148.09 represented deficiency balances resulting from State Bank's repossession and sale, without prior notice to Dodge, of recreational vehicles which it had purchased from Dodge pursuant to the retail installment contracts. In addition to not notifying Dodge of the date of sale, State Bank failed to notify Dodge that a balance owed on an account was two or more installments delinquent, an account had become uncollectible for any reason, or that there were any claims that Dodge had breached any warranty, prior to each repossession or sale. After the repossession and sale of each recreational vehicle, State Bank first notified Dodge of the sale, repossession, and debited deficiency balance and then assigned the contracts back to Dodge. After this notice was received by Dodge, it did not send any written notice to State Bank concerning the debits. As a result of these debits, Dodge has not received any money from the reserve fund.

OPINION

■■ Dodge contends that it was an article 9 debtor under the terms of the Agreement. If such were the case, it was entitled to notice prior to sale of the repossessed vehicles. (Ill. Rev. Stat. 1975, ch. 26, par. 9—504(3).) And, since notice was not provided, Dodge was entitled "to recover from the secured party any loss caused by a failure to comply * * *." (Ill. Rev. Stat. 1975, ch. 26, par. 507(1).) Dodge claims as its loss the amount of deficiency balances resulting from the repossession and sale of the recreational vehicles.

Article 9 defines a debtor as "the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper." (Ill. Rev. Stat. 1975, ch. 26, par. 9—105(1)(d).) Dodge claims that it qualifies as a debtor under this definition because the retail installment contracts which it sold State Bank were chattel paper. We agree.

Article 9 defines chattel paper as "a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods * * *." (Ill. Rev. Stat. 1975, ch. 26, par. 9—105(1)(b).) Each retail installment contract sold to State Bank was a written document which contained a monetary obligation and a security interest in the specific recreational vehicle covered by the contract. Pursuant to terms of addendum "C" of the Agreement, Dodge obligated itself to pay State Bank upon demand for all balances owing on accounts with two or more delinquent installments, balances owing on accounts on which any warranty is breached, and balances owing on accounts which

become uncollectible for any reason. Contrary to a position urged by State Bank, this obligation was absolute and virtually unconditional, and it extended beyond the resources of the reserve fund. In a sense, Dodge's obligation was that of a guarantor. (See *Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295, 372 N.E.2d 926.) Since guarantors are debtors under article 9 (*Commercial Discount Corp. v. Bayer*), Dodge is a debtor under article 9.

State Bank argues, however, that even if Dodge is a debtor, it is precluded from asserting any rights of notice at this late date by the doctrine of equitable estoppel. Equitable estoppel is an affirmative defense and must be specifically pleaded. (Ill. Rev. Stat. 1975, ch. 110, par. 43(4).) If not properly pleaded, the defense is deemed waived even if it is supported by the evidence. (*Orchard Brook Home Association Inc. v. Joseph Keim Land Development Corp.* (1978), 66 Ill. App. 3d 227, 382 N.E.2d 818.) Since State Bank raises this defense for the first time on appeal and bases it on a number of facts appearing for the first time in its brief, we consider this defense waived.

State Bank also argues that even if Dodge were a debtor and were entitled to notice, it was not entitled to the loss which it claimed. Once again, this argument was not made before the trial court and we have no basis for making a determination on it. We believe that a response to this argument should come from the trial court which could conduct further proceedings necessary to make the proper determination.

Therefore, we reverse and remand the judgment of the trial court with instructions to conduct further proceedings to determine what losses Dodge is entitled to recover.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.