COMMERCIAL DISCOUNT CORPORA-
TION and Leaseamatic, Inc.,
Plaintiffs,

v.

William S. KING and Horace Rainey,
Jr., Defendants.

No. 78 C 3442.

United States District Court,
N. D. Illinois, E. D.

May 14, 1981.

---

A. Bruce Schimberg, David M. Schiffman, Sidley & Austin, Chicago, Ill., for plaintiffs.

Harry Adelman, Michael P. Myers, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Commercial Discount Corporation ("CDC") and Leaseamatic, Inc. ("Leaseamatic," a CDC subsidiary) sued defendants William S. King ("King") and Horace Rainey, Jr. ("Rainey") on their joint and several personal guaranties of certain indebtedness of Racran Corp. ("Racran"). CDC and Leaseamatic moved for partial summary judgment against King on the issue of liability. This Court's September 23, 1980 memorandum opinion and order (the "Opinion") granted that motion. King has now moved to vacate the summary judgment on the basis of supplemental affirmative defenses arising out of events occurring after the original motion was fully briefed. For the reasons stated in this memorandum opinion and order King's motion is granted, but part of his affirmative defenses are stricken.

Although summary judgment was not entered as to Rainey, Rainey has filed a set of nearly identical supplemental affirmative defenses, in addition to previously-filed affirmative defenses. Rainey's affirmative defenses are stricken in part for reasons also stated in this opinion.

### First Supplemental Defense

King's first and second supplemental defenses involve identical facts but different legal theories. Both are based on plaintiffs' failure to provide notice of the sale of collateral. Defense No. 1 states that such failure is an absolute bar to plaintiffs seeking a deficiency judgment. Defense No. 2 states that such failure creates a presumption that the proceeds from the sale of the collateral equal the value of the outstanding debt, forcing plaintiff to prove that a fair price was received for the collateral. Dual defenses are asserted because the Illi-

nois Appellate Courts are split as to the legal ramifications of a failure to provide notice of the sale of collateral.

▉▉▉ Under Illinois law a trial court is bound by the decisions of all Appellate Courts, but is bound by the Appellate Court in its own district when the Appellate Courts differ. *People v. Thorpe*, 52 Ill. App.3d 576, 579, 10 Ill.Dec. 351, 354, 367 N.E.2d 960, 963 (2d Dist. 1977). That principle also applies to federal courts sitting in diversity cases. *Instrumentalist Co. v. Marine Corps League*, No. 80 C 5195 (N.D.Ill. Mar. 31, 1981). This Court is therefore bound by decisions of the Illinois Appellate Court for the First District. That court holds that a failure to provide notice simply creates a presumption that the proceeds from the sale of the collateral equal in value any outstanding debt. *National Boulevard Bank of Chicago v. Jackson*, 92 Ill. App.3d 928, 48 Ill.Dec. 327, 416 N.E.2d 358 (1st Dist. 1981). King's First Supplemental Defense, which relies on a theory different from the one this Court must apply, is therefore insufficient as a matter of law.

### Second Supplemental Defense

As part of its loan and security agreement, Racran gave plaintiffs a security interest in all of its equipment. King's Second Supplemental Defense concerns plaintiffs' sale of some of that equipment. Plaintiffs disposed of the collateral under the power granted a secured party under the Illinois Uniform Commercial Code (the "UCC," cited "Section—"), Ill.Rev.Stat. ch. 26, § 9–504(1). Under a related provision, Section 9–504(3):

> Unless collateral is perishable or threatens to decline steadily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has

not signed after default a statement renouncing or modifying his right to notification of sale.

King asserts, and apparently plaintiffs do not contest the fact, that no notice was sent. Plaintiffs contend that defendants waived any right to notice in the following provision of the guaranty agreement:

> The liability hereunder shall in no wise be affected or impaired by (and said CDC is hereby expressly authorized to make from time to time, without notice to anyone), any sale ... of any security or collateral therefor.

▉▉▉ Provisions of the UCC, like any other contract term, can be waived.[1] But UCC Article 9 may present an exception to that general rule. Section 9–504(3) provides that notice of a sale is required unless the debtor has, *after default*, waived this right. Section 9–501(3) provides that various rules favoring debtors, including those in Section 9–504(3), may not be waived. Those two sections in combination clearly render a *debtor's* pre-default waiver of the right to notice void.

While the quoted provision of the guaranty agreement was plainly intended to waive any right to notice of the sale of collateral, it was of course signed *before* Racran's default. Neither King nor Rainey waived his right to notice *after* Racran defaulted.

This Court must therefore decide whether Section 9–504's waiver restriction, which by its terms applies solely to debtors, encompasses guarantors within that term. One recent Illinois opinion offers guidance. In *Commercial Discount Corp. v. Bayer*, 57 Ill. App.3d 295, 14 Ill.Dec. 647, 372 N.E.2d 926 (1st Dist. 1978) the court was confronted with the problem whether, absent waiver, a guarantor is entitled to notice under Section 9–504. As indicated by the case name, CDC was the plaintiff there as it is here. In all relevant respects (the provisions referred to in the Opinion) the guaranty form

---

1. This Court held in the Opinion that King waived his right to have the collateral disposed of in a commercially reasonable fashion.

was identical to that involved here.[2] In the *Bayer* case the Illinois Appellate Court said (57 Ill.App.3d at 299–300, 14 Ill.Dec. 647, 372 N.E.2d at 929):

> Whether, within the meaning of section 9–504(3), the term "debtor" includes the obligor who does not own the collateral is a question of first impression in Illinois .... Plaintiff attempts to distinguish the rule requiring notice to guarantors by asserting its applicability only where the guarantors are involved in the day to day operations of the owner of the collateral. We find no such requirement in *Hepworth v. Orlando Bank & Trust Co.*, and our reading of *T&W Ice Cream, Inc. v. Carriage Barn, Inc.* indicates that, while such a factor was present, it was not dispositive .... Viewed in this light, we believe the only reading of section 9–504(3) compatible with Illinois law is that such section deals with both the collateral and the obligation and, accordingly, the term "debtor" includes both the owner of the collateral and the obligor when they are not the same person. Ill.Rev.Stat. 1975, ch. 26, par. 9–105(1)(d).

> Here, defendants guaranteed full and prompt payment and further promised that it "shall be a continuing, absolute and unconditional guaranty." There is nothing in the record to indicate that they waived or modified the notice requirement after the occurrence of default. Consequently, we cannot say that the trial court misapprehended the law in requiring plaintiff to show compliance with the notice provision of section 9–504(3).

*Bayer* is dispositive here under the familiar rules applicable to diversity cases.[3] Indeed, although the parties have not addressed the issue, the defensive use of collateral estoppel approved in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313; 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) precludes CDC from relitigating the issue it litigated and lost in *Bayer*.[4]

It is true that Judge Aspen has recently analyzed the precise question before this Court and held that Section 9–504(3) does *not* prevent pre-default waiver by guarantors of the right to notice. *National Acceptance Company of America v. Wechsler*, 489 F.Supp. 642 (N.D.Ill.1980). After acknowledging the holding in *Bayer*, Judge Aspen reasoned (489 F.Supp. at 647–48):

> Nonetheless, the Court does not believe that a guarantor's status as a debtor under Section 9–504(3) compels the conclusion that a guarantor may not waive the rights accorded thereunder. First, it should be observed that the collateral in question is not owned by the guarantor. Thus while it may be unconscionable to permit a secured party such as NAC to dispose unreasonably of a debtor's property, the same cannot be said as to a guarantor, who by definition has a lesser interest in that collateral. Second, the Court must consider the general purpose of guarantee agreements. Such agreements facilitate the issuance of loans by insuring that the lender has a ready source from which it can collect in the event of default by the debtor. To this end it would not be unusual for a lender to require a guarantor to waive objec-

---

**2.** CDC argued in *Bayer* that the express waiver in the guaranty excused any requirement of notice to the guarantor. As the language quoted in the text shows, the Appellate Court rejected that argument.

**3.** Under *Erie v. Tompkins* principles this Court, like an Illinois trial court, is bound by the decision of an Illinois Appellate Court. *See, National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147, 148 n.2 (N.D.Ill.1981). This Court would however reach the same result if it employed the alternative Supreme-Court-predictive approach to ascertaining Illinois law

(see *In re Air Crash Disaster*, 644 F.2d 594 at p. 606 (7th Cir. Jan. 5, 1981)). Given the absence of any Illinois Supreme Court opinion on the subject, and the recent vintage of *Bayer*, that case is the best available predictor of a potential Illinois Supreme Court opinion.

**4.** Only two years ago the Supreme Court reaffirmed the continuing vitality of *Blonder-Tongue* in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), further expanding the collateral estoppel doctrine to permit its use offensively.

tions to payment that otherwise might be available.

Were this Court writing on a clean slate, it might concur in the approach taken by Judge Aspen. But that is not the case. Judge Aspen was of the opinion that "the Court in *Bayer* was not presented with a question of waiver ...." (489 F.Supp. at 648). As defendants here have demonstrated by providing this Court with an excerpt from the CDC brief in *Bayer*, the Illinois Appellate Court *was* presented with the waiver question and rejected CDC's argument. That was the significance of its stating (emphasis added):

> There is nothing in the record to indicate that they waived or modified the notice requirement *after the occurrence of default.*

Had the *pre*-default waiver been sufficient, clearly the Court would not have spoken in those terms. And the identity of the parties in the two cases (a factor not present before Judge Aspen) makes the conclusion all the more compelling.

Accordingly King's Second Supplemental Defense requires that this Court's entry of summary judgment be vacated. Under the doctrine announced by the Illinois Appellate Court for the First District, the parties will be required to deal with the deficiency issue in the context of the presumption referred to in *National Boulevard Bank of Chicago v. Jackson.*

### Third Affirmative Defense

■ Much of the Racran equipment was eventually sold to Phoenix Smelting Corp. ("Phoenix"). Certain principals of Phoenix were co-guarantors of the security agreement along with King and Rainey, while others were once officers of plaintiffs. King argues those relationships reflect a "conflict of interest," violating plaintiffs' duty to act in good faith.

UCC Article 9 directly refutes King's argument. All the equipment was sold at a *public auction.* Section 9–504(3) specifically permits a secured party to purchase collateral at such a public auction. After the public auction, a debtor no longer has any interest in the collateral. *See,* Section 9–504(4).[5]

### Personal Jurisdiction

■ Rainey, a non-resident of Illinois, contends that this Court lacks jurisdiction over his person. Plaintiffs assert jurisdiction under the "transacting business" clause of the Illinois Long Arm Statute, Ill.Rev. Stat. ch. 110, § 17(a). All the facts amply support personal jurisdiction over Rainey:

(1) Rainey's guaranty states that it was "signed, sealed and delivered by the undersigned at Chicago, Illinois."

(2) Rainey's guaranty states that "it shall be construed according to the laws of Illinois, in which State it shall be performed by the undersigned."

(3) Under the loan agreement between Racran and plaintiffs, Racran agreed to submit to personal jurisdiction in Illinois and to litigate all disputes in Illinois. Rainey signed the loan agreement on behalf of Racran.

Our Court of Appeals has found personal jurisdiction over a guarantor in a largely similar situation. *O'Hare International Bank v. Hampton,* 437 F.2d 1173 (7th Cir. 1971). Rainey's Affirmative Defense No. 2 is stricken.

### Conclusion

King's motion to vacate the order of summary judgment is granted. Both King's and Rainey's supplemental affirmative defenses, except for King's Second Supplemental Defense and the corresponding defense asserted by Rainey, are stricken under Fed.R.Civ.P. 12(f) as insufficient on their face. In addition Rainey's Affirma-

---

**5.** Plaintiffs have credited defendants with the additional proceeds generated by the subsequent private resale, although such treatment is not directly mandated by the UCC. By so doing plaintiffs have placed defendants in the same economic position as if the ultimate purchaser had bid in at the public auction. That action eliminates potential arguments of chilled bidding or other breaches of fiduciary obligations.

tive Defense No. 2 is also stricken. At the status report date previously set for June 1, 1981 the Court will discuss further proceedings with counsel for the parties.