## NATIONAL ACCEPTANCE COMPANY OF AMERICA, Plaintiff,

v.

### John D. MEDLIN, Thomas E. Rodgers, Dom E. Meffe, et al., Defendants.

No. 78 C 4957.

United States District Court, N. D. Illinois, E. D.

March 22, 1982.

---

Donald Egan, James C. Murray, Lee Ann Watson, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for plaintiff.

Smyth & Guth, Chicago, Ill., for John D. Medlin and Thomas E. Rodgers.

Roger B. Harris, F. John McGinnis, Altheimer & Gray, Chicago, Ill., for Dom E. Meffe.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

This motion for summary judgment stems from an action brought in December, 1978, by National Acceptance Company (NAC) to recover money due on loans made to Medlin Coal Company, Inc. (Medlin Coal) and guaranteed by defendants John D. Medlin, Thomas E. Rodgers and Dom E. Meffe.[1] After extensive discovery by all parties, a final pretrial order was submitted. Thereafter, Medlin and Rodgers filed a motion for summary judgment and Meffe filed a separate motion for summary judgment. Each relies on one legal ground to support the motion: that NAC's failure to provide defendants with proper notice of the sale of the collateral securing the loan is an absolute bar to any deficiency judgment against defendants under Section 9–504(3) of the Illinois Uniform Commercial Code (UCC), Ill.Rev.Stat., ch. 26, ¶ 9–504(3).[2] For

---

1. There were other loans made to Midnight Coal Company guaranteed by Medlin and Rodgers which are not relevant to this motion.

2. UCC Section 9–504(3) states in relevant part:
 (3) Disposition of the collateral may be by public or private proceedings .... Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale....

reasons hereinafter stated, both motions are denied.

The pertinent facts are as follows. In April, 1977, NAC agreed to make a loan to Medlin Coal. An installment note was executed by Medlin as President of Medlin Coal and was signed by Medlin, Rodgers, and Meffe as individual guarantors. In connection with this loan, Medlin also executed a security agreement on behalf of Medlin Coal whereby certain of Medlin Coal's assets, including its coal mining equipment, were pledged as collateral.

In September, 1978, NAC filed an action in the United States District Court for the Eastern District of Kentucky against Medlin Coal, alleging that it had defaulted on the loan and seeking possession of the collateral. In November, 1978, Medlin Coal filed a petition under Chapter 11 of the United States Bankruptcy Act. In February, 1980, NAC successfully petitioned the bankruptcy court for an order allowing it to sell the secured collateral.

Prior to the sale, NAC did not send notice of the proposed sale to Medlin, Rodgers or Meffe, individually, but did send notice to Medlin Coal pursuant to the pleadings filed with the bankruptcy court. Medlin Coal, through its attorney, filed objections to the sale on the ground that it was not a "commercially reasonable" sale of the collateral. The court allowed the sale subject to the objection and "expressly reserved for subsequent adjudication" the issue of commercial reasonableness. The amount realized by the sale was insufficient to cover the debt and NAC instituted an action for a deficiency judgment against the defendants.

The issues to be resolved are whether notice was given within the meaning of Section 9–504(3), and whether, if no notice was given, such lack of notice absolutely bars a deficiency judgment for NAC.

In resolving whether NAC complied with Section 9–504(3)'s notice requirement, the court must first determine whether defendants, as guarantors, are debtors within the meaning of Section 9–105(1)(d) of the UCC and thus entitled to notice. Under Illinois law, as stated in *Commercial Discount Corporation v. Bayer*, 57 Ill.App.3d 295, 299–300, 14 Ill.Dec. 647, 372 N.E.2d 926 (1978), Medlin, Rodgers, and Meffe, as guarantors, would be considered debtors and entitled to the rights guaranteed by Section 9–504(3). *Accord, NAC v. Wechsler*, 489 F.Supp. 642 (N.D.Ill.1980).

The court must further determine whether NAC gave notice to the defendants of the intended sale of the collateral. It is undisputed that NAC did not give notice to any of the defendants individually. Medlin and Rodgers, however, were and are principals of Medlin Coal—Medlin as President and Rodgers as Secretary. They filed affidavits stating that they had received no notice, but the attorney for Medlin Coal in the bankruptcy proceedings testified in a deposition that she forwarded copies of the notice of sale to Medlin and Rodgers and orally discussed the sale with them before it occurred.[3] Thus there is a material factual dispute whether Medlin and Rodgers received notice.

Summary judgment is only appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Furthermore, in ruling on a motion for summary judgment, all evidence and inferences drawn therefrom must be construed in the light most favorable to the party opposing the motion. *See, e.g., Baldini v. Local Union No. 1095*, 581 F.2d 145, 151 (7th Cir. 1978). The factual dispute on the question of notice to Medlin and Rodgers precludes summary judgment and their motion is denied.[4]

---

3. After examining the UCC and the relevant case law, this court concludes that notice to Medlin and Rodgers pursuant to the bankruptcy proceedings, if in fact communicated to them by their attorney, amounts to compliance with, and fulfills the purposes of, the requirements of notice under Section 9–504(3).

4. As the following discussion of Meffe's motion will show, even if it were found that no notice had been given Medlin and Rodgers, their motion would still be denied.

Meffe's motion for summary judgment presents a different problem. Meffe filed an affidavit accompanying his motion stating that he was no longer a principal of Medlin Coal at the time notice of the sale was given, and that he received no notice from any other source. This is undisputed and for the purposes of this motion it is presumed that Meffe was not sent any notice of the sale and did not receive any notice from any other source.

There is a split of authority among the Illinois courts on the effect of a creditor's failure to give notice of the sale of collateral on his ability to recover any deficiency from the debtor.[5] Some Illinois courts apply the "no notice, no deficiency" rule, which holds that failure of a secured party to comply with the notice requirements of Section 9–504(3) flatly bars him from recovering any deficiency, *Morris Plan Co. v. Johnson*, 133 Ill.App.2d 717, 271 N.E.2d 404 (3d Dist. 1971). Others follow the "rebuttable presumption" rule, which holds that failure to provide the statutory notice merely raises the presumption that the value of the collateral sold was equal to the amount of the debt, thereby placing the burden on the creditor to rebut that presumption and prove that the sale was commercially reasonable, *Tauber v. Johnson*, 8 Ill.App.3d 789, 291 N.E.2d 180 (1st Dist. 1972).

The Illinois Supreme Court has not decided the issue, and while this court ought to attribute some weight to the appellate court decisions, they are not controlling. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). As the Seventh Circuit has recognized, intermediate appellate court decisions provide this court with data for ascertaining relevant Illinois law, but may be disregarded if this court is convinced by other persuasive data that the Illinois Supreme Court would decide otherwise. *Gates Rubber Co. v. U.S.M. Corp.*, 508 F.2d 603, 607 (7th Cir., 1975). This court must therefore determine how the Illinois Supreme Court would decide this issue by considering the Illinois appellate court decisions as well as other persuasive authorities.

5. Illinois law applies in this diversity case.

After reviewing the relevant authority, the "rebuttable presumption" rule as advocated by the Illinois appellate court for the First District appears the more logical approach. Section 9–507(1) provides a remedy for failure to comply with Section 9–504(3) by granting the debtor the right "to recover from the secured party any loss caused by a failure to comply with the provisions" of the Code, but makes no mention of a denial of a deficiency judgment. This section indicates that the Code's drafters did not intend that failure to give notice would bar the creditor's right to a deficiency judgment. *U. S. v. Whitehouse Plastics*, 501 F.2d 692, 696 (5th Cir. 1974). The right to recover any loss stemming from the lack of notice necessarily includes any prejudice to the debtor from loss of his right of redemption under Section 9–506 or from loss of the opportunity to take steps to drive up the sale price and eliminate or reduce any deficiency. *Id.*, at 696. Because of the specific provision for a penalty in the event of a defective sale, the sensible approach is to apply the Code penalty and no more. Hogan, *Pitfalls in Default Procedure*, 2 U.C.C. L.J. 244, 257 (1969).

Moreover, the default is separable from the lack of notice and it seems reasonable that recovery on the basic debt be in the usual way and in accordance with the terms of the note. *Barbour v. U. S.*, 562 F.2d 19, 21 (10th Cir. 1977). This view recognizes the respective positions of the borrower and the lender and their remedies provided in the UCC. Preference for the "rebuttable presumption" rule is further reinforced by the UCC's avoidance of punitive damages. For these reasons, this court believes that the Illinois Supreme Court would adopt this rule.

The court finds no absolute bar to a deficiency judgment for failure to give notice and therefore denies Meffe's motion for summary judgment.

## CONCLUSION

Accordingly, Medlin and Rodgers' motion for summary judgment is denied and

Meffe's motion for summary judgment is also denied.