**UNITED STATES of America, Plaintiff,**

v.

**Ray CRISPEN, et al., Defendants.**

No. 84 C 10581.

United States District Court,
N.D. Illinois, E.D.

Oct. 2, 1985.

Anton R. Valukas, U.S. Atty., Elizabeth Stein, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Mark L. Prager, John L. Hines, Jr., Schwartz, Cooper, Kolb & Gaynor Chtd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

On April 7, 1980, Crispen, Inc. borrowed the sum of $167,000 from First National Bank and Trust Company of Evanston which subsequently assigned the loan to the Small Business Administration ("SBA"), as part of the Loan Guaranty Program. Ray G. Crispen and Joanne Crispen (the "Crispens") executed an SBA form guaranty and a mortgage on their home. A note evidencing the indebtedness was also signed on behalf of Crispen, Inc. by Ray G. Crispen as its President. The guaranty specifically waived the guarantor's right to notice of the time or place of sale of the collateral in the event default occurred. The guaranty further provided that it should be construed and enforced in accordance with applicable federal law.

Crispen, Inc. subsequently defaulted on the loan. Crispen, Inc. and Ray and Joanne Crispen, as guarantors, were notified of the default and demand for payment by certified mail on October 1, 1980. The corporation's letter was returned as unclaimed. The Crispens assert that they never received the letters.

The SBA sent notice to the Crispens' attorney on November 25, 1981 of a private sale of the assets to be held November 30, 1981. On October 14, 1981 there had been an independent appraisal of the Crispens equipment determining the value of the assets to be $60,000. The November sale raised $94,000, which was applied to reduce

the outstanding indebtedness of Crispen, Inc.

After failing in negotiations to settle the matter of the remaining outstanding debt, the government filed this action on December 11, 1984 to foreclose on the note and accompanying instruments. The government seeks the principal sum of $89,141.98 plus interest accruing at the rate of $54.48 per day.

On May 2, 1985, the government filed its motion for summary judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Because the motion and response refer to matters outside the pleadings, in accordance with Rule 12(c), the motion will be treated as one for summary judgment and disposed of as provided by Fed.R.Civ.P. 56.

In support of its motion, the government submitted the affidavit of Paul Huska, Loan Specialist, Liquidation Division, Small Business Administration. The affidavit attests to the Bank's assignment of note, guaranty, and mortgage to the SBA. It also attests to the default by Crispen, Inc. and the notice and demand made to the Crispens. Certification of Official Documents and Certified Transcripts of Account were also presented.

In their response to the motion for judgment on the pleadings or for summary judgment, the Crispens assert that the SBA failed to comply with Section 9–504 of the Uniform Commercial Code ("U.C.C."), Ill. Rev.Stat. ch. 26, § 9–504, which requires notice of the sale. They also assert that failure to conduct the November, 1981 sale within the bounds of commercial reasonableness as required by Section 9–504 precludes entry of summary judgment against them.[1]

On June 13, 1985, the Crispens filed a motion for leave to file additional affirmative defenses. The motion was made to conform the answer to their response to the government's motion for judgment on the pleadings or for summary judgment. The affirmative defenses which the Crispens sought to file are: (1) Section 9–504 applies to the November, 1981 sale; (2) the sale was commercially unreasonable due to lack of notice; (3) the SBA is barred by the equitable doctrine of laches from collecting sums due under the note; and (4) the note and guaranty have contradictory terms regarding the applicable interest rate, thereby raising a material issue of fact.

After an examination of all the pleadings and affidavits, this Court concludes that there are no issues of material fact, and thus grants summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The defendants' motion for leave to file additional defenses is also granted. As a matter of law, however, the affirmative defenses the defendants seek leave to file do not affect the Court's disposition of this case in granting summary judgment for the government.

*The Application of Section 9–504 and the Commercial Reasonableness of the Sale*

The Crispens assert that the government cannot collect from them on the guaranty because the SBA failed to notify them prior to its sale of the business equipment and failed to dispose of the equipment in a commercially responsible manner as is required by Section 9–504(3) of the U.C.C. Section 9–504(3) of the U.C.C. provides:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place

---

**1.** To prevail on a motion for summary judgment, a party has the burden of establishing that there is no genuine issue of material fact. *Korf v. Ball State University,* 726 F.2d 1222 (7th Cir.1984). Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Hermes v. Hein,* 742 F.2d 350 (7th Cir.1984). The existence of a factual dispute, however, only precludes summary judgment if the disputed fact is outcome-determinative. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). " 'A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth.' " *Korf,* 726 F.2d at 1226, quoting *Admirality Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1306 (9th Cir.1982).

and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of .widely distributed standard price quotations he may buy at private sale.

Ill.Rev.Stat. ch. 26, § 9–504(3). The government contends that the guaranty was "unconditioned" and free of the restrictions relating to method, manner, time, and place of disposing of the collateral and that, in any event, the Crispens specifically waived those defenses in signing the guaranty.

Although Section 9–501 of the U.C.C. clearly bars such a waiver by the debtor,[2] a series of cases involving actions by the government to recover on SBA loan guarantees, and construing language similar to that found in the guaranty signed by the Crispens, have allowed such waivers. Guarantors have been precluded from raising such defenses against the government on the principle that the guaranty is "unconditional".

For example, in *United States v. Lattauzio*, 748 F.2d 559, 562 (10th Cir.1984), the court held that guarantors on an SBA loan waived the commercial reasonableness defense of Section 9–504 in signing the guaranty. Similarly, in *United States v. Kurtz*, 525 F.Supp. 734 (E.D.Pa.1981), *aff'd without opinion*, 688 F.2d 827 (3d Cir.1982), *cert. denied*, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982), the court held that a guarantor on an SBA guaranty waived by contract the protections afforded by the U.C.C., including the right to notice. The court specifically recognized Section 9–501's proscription on waiver, but based its decision on the tendency of courts to permit SBA loan guarantors to waive Section 9–504 protections. *Id.* at 745–46. An identical waiver was also upheld in *National Acceptance Co. of America v. Wechsler*, 489 F.Supp. 642, 548 (N.D.Ill.1980).[3]

As with any contract, the language of the guaranty must be examined to determine the rights and obligations of the parties. Where the terms of a contract of guaranty are unequivocal, the plain language of the guaranty controls. The guaranty must be interpreted according to the

---

**2.** Section 9–501(3) provides:
   To the extent that they give rights to the debtor and impose duties on the secured parties, the rules stated in the subsections referred to below may not be waived or varied except as provided with respect to compulsory disposition of collateral (subsection(s) of Section 9–504 and Section 9–505) and with respect to redemption of collateral (Section 9–506) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable.

**3.** The court in *National Acceptance Co. of America, supra,* held that Section 9–501(3) provided no impediment to a waiver of a guarantor's rights under Section 9–504(3) of the U.C.C.

   By contrast, in *Commercial Discount Corp. v. King*, 515 F.Supp. 988, 990 (N.D.Ill.1981), upon which the Crispens heavily rely, the court held that Sections 9–501(3) and 9–504(3) "in combination clearly render a ... a pre-default waiver of the right to notice void." This Court chooses to follow the ruling in *National Acceptance, supra,* rather than to focus on the distinction between pre-default and post-default waivers of the notice requirement. If, despite Section 9–501(3), the waiver of certain rights is permitted, as the case law cited above indicates, then it makes no difference whether the waiver is signed pre-default or post-default.

language used because it is presumed that the parties meant what their language clearly imparts. *IIT Diversified Credit Corp. v. Kimmel,* 508 F.Supp. 140 (N.D.Ill. 1981).

In *United States v. Fisher,* 460 F.Supp. 297 (E.D.Wisc.1978), the court found the commercial reasonableness defense was precluded by the express language of the guaranty. The guaranty agreement involved in *Fisher* granted the following powers to the lender:

> In the event of the nonpayment when due, whether by acceleration or otherwise, of any of the liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as Lender may elect, at any public or private sale or sales, for cash or on credit or for future delivery, without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the Undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise, or to forbear from realizing thereon, all as Lender in its uncontrolled discretion may deem proper, or to purchase all or any part of the collateral for its own account at any such sale or foreclosure, such powers to be exercised only to the extent permitted by law.

*Fisher,* 460 F.Supp. at 298–99.

The language of the Crispens' guaranty is exactly the same as the language of the guaranty in *Fisher.* The guaranty here provides the following powers to the lender, in pertinent part:

> *In the event of the nonpayment when due,* whether by acceleration or otherwise, of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, *to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as Lender may elect, at any public or private sale or sales, for cash or on credit or*

*for future delivery, without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the Undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise, or to forbear from realizing thereon, all as Lender in its uncontrolled discretion may deem proper,* and to purchase all or any part of the collateral for its own account at any such sale or foreclosure, such powers to be exercised only to the extent permitted by law....

(Emphasis added.)

Most significantly, the Seventh Circuit has recently held that a guarantor waived her right to notice and to a commercially reasonable sale when she signed a guaranty whose language was also apparently identical to the language at issue in this case. *United States v. Meadors,* 753 F.2d 590, 593–94 (7th Cir.1985). Although the Seventh Circuit relied in part on Indiana law, it expressly stated that "[f]ederal law governs questions involving rights of the United States arising under nationwide federal programs." *Id.* at 592. Obviously, this Court is bound by decisions of the Seventh Circuit.

■ This Court, in reviewing the terms of the SBA's guaranty in light of the principles and case law set forth above, finds that although Section 9–504 does apply, the Crispens expressly waived Section 9–504 by signing the guaranty.

Even if this Court were to conclude that the SBA had an obligation to send notice to the Crispens despite their waiver of Section 9–504, there still would remain no genuine issue of material fact with respect to their actual receipt of reasonable notice and with respect to the commercial reasonableness of the disposition of Crispen, Inc.'s assets. First, despite the Crispens' assertion that they did not receive the notice of default and demand for payment sent by certified letter dated October 1, 1981, the SBA has submitted the certified mail receipts signed by Joanne Crispen indicating that she did indeed receive both her letter and that sent

to her husband on October 10, 1981. Thus, there is no basis in fact for the Crispens' denial that they received the October 1 letters absent an affidavit that the signatures were not those of Joanne Crispen.

Second, the SBA affidavit attests that its letters of November 6, 13, and 25, 1981, sent to the Crispens' attorney, gave the Crispens actual notice of the sale.[4] It is well settled that a secured creditor can satisfy the notice requirement by sending notification to a proper party; it is not necessary that the debtor receive it.[5] J.J. White & R.S. Summers, *Uniform Commercial Code* § 26–10 (2d ed. 1980).

To be considered "genuine" for Rule 56 purposes, a material issue must be established by "sufficient evidence supporting the claimed factual dispute." *First National Bank of Arizona v. Cities Service Co., Inc.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Moreover, to defeat the government's summary judgment motion, the defendants were obligated to submit affidavits or other admissible evidence to dispute the facts established by the government's affidavits; they cannot rely on mere denials. *United States v. Bob Stofer Oldsmobile-Cadillac, Inc.*, 766 F.2d

1147, 1150–52 (7th Cir.1985); *Berghoff Restaurant Co., Inc. v. Lewis W. Berghoff, Inc.*, 499 F.2d 1183, 1186 (7th Cir.1974). The Crispens have not done so.[6]

Nor do the Crispens contend that their attorney did not receive the November 25, 1985 letter notifying them of the impending sale of assets. Thus, the Crispens received all the notice to which they were entitled under Section 9–504 even if they did not waive Section 9–504. *National Acceptance Co. of America v. Medlin*, 538 F.Supp. 585, 587 (N.D.Ill.1982). (Notice sent to attorney fulfills the purposes of the notice requirement of Section 9–504(3).)

Finally, that the sale itself was commercially reasonable is established by the fact that the ultimate recovery credited to the loan balance was substantially in excess of the appraised auction value. And, even if the sale price was too low, as the Crispens contend, absent fraud, mistake, or illegal practices in the sale, it can still be commercially reasonable. *Bryant v. American National Bank & Trust Co. of Chicago*, 407 F.Supp. 360, 366 (N.D.Ill. 1976). Even the Crispens do not contend that the SBA engaged in such conduct.

---

**4.** The November 25, 1981 letter was sent to the Crispens' counsel because the Crispens themselves were not in the country at the time.

**5.** Section 1–201(38) of the U.C.C. reads as follows:

"Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances. The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending.

*See also Hawkins v. General Motors Acceptance Corp.*, 250 Md. 146, 242 A.2d 120, 5 U.C.C.Rep. Serv. (Callaghan) 556 (1968) (merely sending notice sufficient).

**6.** This Court regards the defendants' argument that the SBA has offered no competent evidence that it sent notice to the Crispens as wholly without merit, if not frivolous. The Crispens contend that the November 25, 1981 letter to the Crispens' attorney, Mark Prager, "is of little or

no probative value" because "[t]here is no testimony establishing the identity of Mark Prager, his relationship to the Crispens, any obligation of his to notify the Crispens, his authority to receive notice or that the letter was in fact sent." In light of the fact that Mark Prager is also the very same attorney who is representing the Crispens in this Court, he, at the very least, had an obligation to submit his own affidavit establishing that he did *not* receive the letter or did *not* have their authority to receive notice if such were the case. He did not do so. Attorneys, who are officers of the court, should not make such "clever" but deceiving arguments without a basis in fact. Fed.R.Civ.P. 11. Moreover, the defendants' argument is also invalid because it assumes that the government contends that only the November 25, 1981 letter provided notice of the sale, whereas the government in fact contends that the entire series of correspondence dated November 1, 6, and 25, 1981, attached to its affidavits, from the SBA to the Crispens' counsel constituted notice of the sale. The Crispens' argument that notice was not timely because the sale occurred five days after November 25 is, for the same reasons, without merit.

Instead, they merely assert on information and belief that the $94,000 amount realized by the SBA on the sale of Crispen, Inc.'s assets was "substantially lower than the SBA could have received had it properly advertised and otherwise pursued recognized markets for the assets of Crispen, Inc." (Affidavit of Ray Crispen, ¶ 6.) Statements in affidavits made upon information and belief may, of course, be disregarded as not meeting the personal knowledge requirement of Rule 56. *Automatic Radio Manufacturing Co. v. Hazeltine Research,* 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950); *Cohen v. Ayers,* 449 F.Supp. 298, 321 (N.D.Ill.1978), *aff'd,* 596 F.2d 733 (7th Cir.1979).

This Court holds that the waiver in the guaranty is valid against the Crispens. Alternatively, even if the proscription on the Section 9–504 waiver were enforced, the requirements imposed by the U.C.C. were in fact fulfilled by the SBA.

## The Doctrine of Laches

The Crispens assert that the equitable doctrine of laches must bar the government from seeking a deficiency. The Crispens claim the loan is subject to all the defenses in law and in equity which existed against the First National Bank of Evanston.

The Crispens' assertion is without merit. It is well established that the United States is not subject to the defense of laches. *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940) (The United States had been assigned a claim against an estate, and the Court held that the doctrine of laches and the statute of limitations could not be asserted against the United States). Courts have consistently adhered to this principle.[7]

## Applicable Interest Rate

█ The Crispens assert that the note and guaranty are contradictory in their terms. They allege that the note requires that upon default the interest rate shall be fixed at the prime rate at the time of default. The guaranty purportedly fixes the rate at 2% per annum above the prime rate. The government contends that the wording of the guaranty only describes the note and that the terms of the note control. This Court agrees.

In any event, the purported contradiction in interest rates does not bar the government's right to recovery. The Crispens must be deemed to have knowledge of the terms of the instruments when they executed them. Even if the Crispens are correct in their contention that the interest rate provided by the guaranty contradicts that provided by the note, the government here is seeking the interest rate provided by the note. The Crispens do not contend that the interest rate provided in the note is ambiguous.

Upon examining the note, this Court finds that the note is unambiguous in its provision that the interest rate shall be frozen to the prime rate at the time of default. It provides:

> In the event of default ..., the rate of interest on both the guaranteed and unguaranteed portions of the unpaid principal balance shall become fixed at the rate in effect as to the initial date of default.

Based upon the plain language of each instrument together with the Crispens' pleadings and affidavits, this Court concludes that there are no genuine issues of material fact regarding the applicable interest rate due and owing to the government.

## Conclusion

For the foregoing reasons, this Court finds that no genuine issues of material fact exist regarding the rights of the government and the Crispens under the guaranty. The SBA's disposition of the equipment of Crispen, Inc. was commercially reasonable. The doctrine of laches is a

7. *See e.g., Berliant v. Commissioner of Internal Revenue,* 729 F.2d 496, 500 (7th Cir.1984), *cert. denied, Kraft v. Commissioner,* — U.S. —, 105 S.Ct. 174, 83 L.Ed.2d 109 (1984) (dicta); *Chevron, U.S.A., Inc., v. United States,* 705 F.2d 1487, 1491 (9th Cir.1983); *United States v. Hughes House Nursing Home, Inc.,* 710 F.2d 891, 895 (1st Cir.1983).

defense not available against the United States. Furthermore the Crispen's have failed to raise an issue of fact regarding the fixed interest rate they are liable to pay. The government's motion for summary judgment against the Crispens is, therefore, granted.

Judgment will enter as follows:

Summary judgment is entered in favor of the Small Business Administration in the principal sum of $89,141.98 plus interest accruing at the rate of $54.48 per day from default to the date of this opinion. The government has a valid and subsisting lien on all of the property covered by the mortgage for the amounts due the United States, and prior and superior to the claims or interest of any of the defendants. If the amounts due are not paid within 30 days from the date of this opinion, the government has the right to foreclose on and sell the mortgaged real property of the Crispens. The Court recognizes the government's lien upon the mortgaged property and adjudges the lien to be superior to the claims and interests of the Crispens. The Crispens, and all persons claiming by, through, and under them subsequent to the commencement of this action are barred and foreclosed of all title and equity of redemption in and to the mortgaged property. The United States Marshal may sell the property and take from the proceeds the amount of $89,141.98 plus interest accruing in the amount of $54.48 per day from the date of default until the date of this opinion. Also, such moneys as the government may expend for taxes, insurance premiums, title costs or other necessary actions to carry out the covenants contained in the note, guaranty and mortgage, together with the costs of this action, with interest on the sum due as allowed by law to the date of sale may also be retained from the proceeds. The United States Marshal may employ an auctioneer to conduct such a sale. The Small Business Administration has the right to bid on the real property. Upon the saleof the property a Marshal's Certificate of Sale must be issued to the purchaser at the sale. If the amount paid to the government from the proceeds of such foreclosure sale is insufficient to pay the sums due the government under this decree, then a judgment shall be issued against the Crispens for the amount of the deficiency. The Crispens are enjoined from committing waste upon the real property or doing any other act which may impair the value of the property.

It is so ordered.